## CARTER OIL CO. et al. v. KERLEY.

No. 15239—Opinion Filed March 17, 1925.

**1. Nuisance—Abatable Nuisance—Flow of Waste from Oil Wells.**

A violation of the provisions of section 7969, Comp. Stat. 1921, providing that in no case shall waste oil be permitted to flow over the land and that salt water shall not be allowed to flow over the surface of the land, constitutes a nuisance which in legal contemplation can be abated by the expenditure of labor or money.

**2. Same—Limitation of Actions.**

When a cause of injury is abatable, either by an expenditure of labor or money, it will not be held permanent, and when not permanent the statute of limitations does not begin to run until the injury is suffered.

**3. Trial — Instructions — Refusal of Requests Covered in Charge.**

When a requested instruction covers the same subject-matter and conveys substantially the same meaning as one already given by the court on its own motion in its general charge to the jury, the refusal to give the requested instruction is not reversible error.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Carter County; Asa E. Walden, Judge.

Action by H. A. Kerley against the Carter Oil Company and others. From judgment in favor of plaintiff, defendants bring error. Affirmed.

Jas. A. Veasey, Walter Davison, C. M. Oakes, R. A. Hefner, Blakeney & Ambrister, Edw. H. Chandler, Summers Hardy, W. J. Gregg, Dolman & Dyer, and Alvin Richards, for plaintiffs in error.

Brett & Brett, for defendant in error.

Opinion by PINKHAM, C. This action was commenced by the filing of plaintiff's original petition on May 18, 1921, which petition was later amended, alleging that the plaintiff—defendant in error herein—is the owner of certain lands in sections 28, 29, 32, and 33, township 4 south, range 3 west, in Carter county, therein specifically described, and that the defendants and each of them are engaged in producing oil and operating oil wells in sections 9, 10, 15, and 16, of said township, range, and county; that in their operations the said defendants have negligently allowed oil and salt water to waste on the premises around their wells, and to accumulate in and around their premises in great quantities; that during the latter part of the year 1919, and the year 1920, the salt waste from said wells drained into the stream of water running across the lands of plaintiff and overflowed upon a portion of said lands consisting of 75 acres thereof, causing the lands so overflowed to become sterile and nonproductive, and killing the vegetation thereon; that the said 75 acres of land so overflowed was, prior to the action complained of, productive and of a reasonable market value of $100 per acre, but that the continual overflow of said land of the waste oil and salt water from the wells of defendants has rendered said land worthless to the damage of plaintiff in the sum of $7,500.

It is further alleged that the stream of water flowing through the premises of plaintiff furnished stock water for the pasture of plaintiff, said pasture consisting of 700 acres of land, and was and is the only stock water available for said stock, and that the said stream has been ruined for stock water by reason of the salt water and oil draining into the same from the wells of defendant; that plaintiff has been thereby deprived of the use of said stream for stock water and therefore damaged in the sum of $2,000.

Each of the defendant oil companies, for its answer, denied generally the allegations of plaintiff's petition, and further pleaded the judgment obtained by one W. C. Newton and his wife, which awarded damages caused by some of the defendant companies allowing oil and salt water to escape in January, 1917, and 1917, as a bar to the present action by the plaintiff, H. A. Kerley, for damages caused by the defendant companies permitting oil and salt water to escape from their premises and overflow the said lands in the latter part of 1919 and the year 1920.

The case was tried to the court and jury and resulted in a verdict for the plaintiff for $1,000 damages to the land and $500 to the water rights of the plaintiff. Judgment was rendered upon the jury's verdict, exceptions reserved by each of the defendant oil companies, and the cause comes regularly on appeal of defendants by petition in error and case-made attached.

Counsel for the defendant oil companies state in their brief that all the alleged er-

rors of which the plaintiffs in error complain in this court and which it is desired to urge can be disposed of by a correct determination of the legal principles governing the question as to whether the injuries complained of, either in their cause or result, are permanent in character. or were adjudicated to be permanent by the decision in the Newton Case, and the further question as to the measure of damages applicable, in case it should be held that the plaintiff had a cause of action for damages to his stock water.

The record discloses that in the year 1918 W. C. Newton and his wife owned the lands involved in this action and on the 13th day of November, 1918, instituted an action against some of the oil companies that are plaintiffs in error in the instant case.

The petition in the Newton Case is incorporated in the record before us, and it is alleged therein that on or about January 1, 1917, said oil companies permitted waste oil and salt water to escape from their premises and to flow over and across the lands of W. C. Newton and wife, and that by reason of the wrongful, unlawful, and careless actions of defendants, as aforesaid, the lands of plaintiffs (Newtons) have been damaged in the full sum of $2.50 per acre, and further allege that the creek, which prior to January 1, 1917, had been used as stock water, was by reason of the waste oil and salt water, which escaped from the premises of said oil companies, rendered unfit for stock to drink and ask for damages by reason of the pollution of said stream in the sum of $350.

It appears that W. C. Newton and wife obtained judgment against the oil companies sued in that action for $500, and the court found that by reason of the waste oil and salt water which was allowed to escape from the premises of the oil companies and flow down the stream "the real estate along said creek was rendered unfit for grazing and agricultural purposes, and the said real estate is permanently damaged thereby."

In August, 1919, H. A. Kerley, the defendant in error in the instant case, purchased the lands from W. C. Newton and wife, and as before stated, on May 18, 1921, instituted this action.

The argument of the oil companies, as we understand it, is that the recovery in the Newton Case was for permanent injury to the lands acquired by the plaintiff, Kerley, from Newton, and that the judgment in the Newton Case operates as a bar to plaintiff's recovery as to all of the lands involved in that case.

We do not think this contention can be sustained. We observe nothing in the allegations in the petition in the Newton Case or in the judgment rendered in his favor that lends any support to this proposition.

Newton simply instituted an action against some oil companies, defendants in the present action, for damages caused by the escape of oil and salt water from their premises. There is no allegation in the Newton petition that any future damages might occur. Newton's suit was for temporary injury to trees and crops grown by him on his land. The question of permanent injury was not an issue in that case, as we understand this record.

The theory of the defendant companies seems to be that permanent partial injury is equivalent to total destruction of the usable value of the freehold.

There is a broad distinction between a partial permanent injury, and a total destruction of property.

In Harmon v. Railroad, 87 Tenn. 614, cited by defendants in their brief, it is said:

"There is a broad distinction between those injuries occasioned by causes permanent in their character and which are likely to continue with no right in plaintiff to abate them, and those which arise from nuisances which may be discontinued. In respect to the former, the entire damages, past and prospective, can be estimated, and the cause of action cannot be split up, while as to the latter, it 's not to be presumed that the wrongs will be continued; and it would be unjust to defendant to allow plaintiff to recover damages estimated upon such an assumption. On the other hand, it would be equally wrong to permit the defendant to insist upon such a rule of compensation and thus become vested with a perpetual license to commit a nuisance to the injury of plaintiff and over his protest."

In Nashville v. Comar, 88 Tenn. 416, it is said by Lurton, J.:

"It seems to us that the true rule deducible from the authorities is that the law will not presume the continuance of a wrong, nor allow a license to continue a wrong, when the cause of injury is of such a nature as to be abatable, either by the expenditure of labor or money. And that where the cause of injury is one not presumed to continue, that the damages recoverable from the wrongdoers are only such as have accrued before action brought, and that successive actions may be brought for the subsequent continuance of the wrong or nuisance."

It is settled law in this jurisdiction that when a cause of injury is abatable by an

expenditure of labor or money it will not be held permanent (City of Ardmore v. Orr, 35 Okla. 305, 129 Pac. 867).

An express statute of this state makes it the duty of persons engaged in the business carried on by the defendants not to permit the waste products to run into any stream used for watering stock or to allow salt water to flow over the surface of the land (section 7969, Comp. Stat. 1921).

The violation of this statute constitutes a nuisance which, in legal contemplation, can be abated by the expenditure of labor or money. It would be preposterous to say that the Legislature would enjoin a duty, the performance of which would be impossible of accomplishment.

We are unable to agree with the further contention that the plaintiff elected to consider the injuries as permanent. The only Oklahoma case cited to sustain the proposition is Chicago, R. I. & P. Ry. Co. v. Davis, 26 Okla. 434, 109 Pac. 214.

We observe nothing from a careful examination of the case cited applicable to the situation presented by the record in the instant case. The opinion quotes with apparent approval from Railroad Co. v. Cook, 57 Ark. 387, 21 S. W. 1066, as follows:

"If all damages that may ever result from the nuisance are in law the result of its construction as an original wrong, then everything that is a damage in legal contemplation, whether for past or prospective losses, is recoverable in one action; but if the wrong be continuing, and the injuries successive, the damage done by each successive injury may be recovered in successive suits, and the injury to be compensated in the original suit is only the damage that has happened."

Cases of the character of the one here presented are not based upon the theory that the construction of the defendants' oil producing works constitutes an original wrong, but that the defendants have negligently and unnecessarily permitted oil and salt water to pollute the stream and thereby damage the property rights of another.

It is further contended that in the Newton Case it is alleged that Red Oak creek has been polluted ever since the 1st day of January, 1917; that this statement is binding upon his grantee, Kerley, and the present cause of action is therefore barred by the statute of limitations.

In Atchison, T. & S. F. Ry. Co. v. Eldridge, 41 Okla. 463, 139 Pac. 254, it is said:

"When a cause of injury is abatable, either by an expenditure of labor or money,

it will not be held permanent. It follows that when not permanent, the statute of limitations does not begin to run until the injury is suffered. * * *"

It is further contended that, as shown by the abstract and the record, the plaintiff and his witnesses were allowed, over the objection of defendants, to testify that the natural water flowing across plaintiff's land was worth $1,000 a year, and that the court refused to allow any testimony as to the rental value of plaintiff's pasture with the natural water polluted but with artificial water supply such as has been provided.

The record shows that the plaintiff, Kerley, had 700 acres of land in his pasture, which was supplied with water by Red Oak creek and the stock of Newton used the water while he owned the land, and that stock also used it, after Kerley purchased it, for some time.

There is evidence that it became so contaminated and impregnated with oil and salt water that it injured the stock when they drank it. It further appears that a number of witnesses qualified and stated that they knew the value per acre of the creek as stock water for the Kerley pasture and that they placed its value at $1,000.

The evidence also shows that the rental value of this pasture land was fixed by the witnesses.

There is testimony, which it appears was not contradicted, that this pasture land, without water, was worth nothing.

There is further evidence that on account of the absence of water Kerley had to move his cattle away; that there was water in the creek, but the cattle could not drink it. It appears that the court allowed counsel for the defendants to go into the question of the rental value of this pasture and artificial water supply.

In view of the evidence disclosed by the record we do not think the defendant companies were prejudiced by instruction No. 7, complained of, which instruction was given by the court with reference to the measure of damages for the loss of the use of stock water, in which the court told the jury "that the measure of damages is the reasonable value of said water to said premises."

Defendants' requested instruction appears to convey the same meaning, in substance, as the instruction complained of.

When a requested instruction covers the same subject-matter and conveys substan-

tially the same meaning as one already given by the court on its own motion, in its general charge to the jury, the refusal to give the requested instruction is not reversible error.

Upon the whole case we are of the opinion that no prejudicial errors affecting the substantial rights of defendants were committed by the trial court, and that the judgment should therefore be affirmed.

By the Court: It is so ordered.