SHELL PETROLEUM CORP. et al.
v. KENT et ux.

No. 28977. June 18, 1940.

Rehearing Denied Sept. 10, 1940.

*105 P. 2d 230.*

W. M. Bowles, of Perry, and Geo. W. Cunningham, W. D. Simms, Edward H. Chandler, Hawley C. Kerr, George Bowen, Clay Tallman, Warren D. Abbott, Victor C. Mieher, and John R. Ramsey, all of Tulsa, for plaintiffs in error.

Henry S. Johnston, of Perry, for defendants in error.

DAVISON, J. The defendants in error, as plaintiffs, commenced this action on July 10, 1937, against the plaintiffs in error and others, as defendants, for the recovery of damages from alleged injuries to their farm by reason of said defendants' pollution of Black Bear creek, which traverses same.

The parties will hereinafter be referred to as they appeared in the trial court.

The only actual damages that the plaintiffs alleged was the sum of $7,680, of which $7,500 was for the depreciation in the value of said farm as of January, 1935, by the subsequent diminution of its "pasture value" and the injury of certain growing timber thereon. The other item of $180 was alleged to represent the extent to which two of the plaintiffs' milch cows had depreciated in value from drinking the polluted water.

The jury awarded plaintiffs damages in the sum of $1,700, and the court entered judgment in accordance therewith.

In their appeal from said judgment, the defendants take the position that the trial court erred in overruling the demurrers to the evidence and motions for a directed verdict they interposed at the trial because of the absence of any competent evidence showing that the alleged pollution caused the death of plaintiffs' timber and injuries to their cattle and for the further reason that their alleged cause of action is barred by the statute of limitations.

It is conceded by the defendants that Black Bear creek was permanently polluted in the year 1925, and they do not deny their responsibility for the presence of salt water in the stream in the year 1937, but it seems to be their contention that there is no evidence that the condition of said creek changed during the two-year period preceding the latter date in such a manner as to inflict injuries plaintiffs claim to have suffered during said period.

Neither of the propositions formulated by defense counsel directly controverts the plaintiffs' claim that the pasturage value of their farm was depreciated during the period in question, but our attention is directed to portions of the testimony which tend to prove that the stream was polluted in 1935 as it had been in former years. If it were true that the water in said stream was unfit for the watering of livestock in 1935, then, of course, proof merely that the same was true in 1937, would in no wise indicate that the value of plaintiffs' land had been permanently diminished on that account during the intervening period. However, not all of the testimony is in accord with that which defense counsel has pointed out. More than one of the witnesses who were interrogated concerning the condition of the stream during 1935 testified to the effect that by the first part of that year it had improved so that livestock could drink from it without injury, but that later the same year, the proportion of salt water in the stream increased so that this was no longer possible. While it is true that the only particular portions of the stream that said testimony concerned were farther away from the source of the pollution than the plaintiffs' farm, there is evidence tending to show that the condition of the water at those points was not peculiar to them or local, but existed generally along the course of the stream in the vicinity of said farm.

The increase in the proportion of salt water to fresh water in the stream might in a measure have been due to a decrease which the evidence shows in the amount of rainfall in its drainage basin, yet it could also have been the result of additional exploration for and production of oil and gas which the evidence shows occurred up the stream about the same time. However, since the defendants do not claim the evidence is insufficient to show that they were polluting the stream during the period in question, we deem it unnecessary to consider the evidence concerning the possible causes of its condition.

The plaintiff, Abe Kent, testified in substance that after the stream became polluted he was compelled to restrict the grazing of his cattle to a smaller area than formerly used, where they did not have access to the stream's injurious waters, and to thereafter make other arrangements for their drinking water, and ultimately to purchase it. From this and other evidence unnecessary here to mention, there is no doubt that plaintiffs' farm was rendered less suitable and valuable for the raising of livestock during the two-year period in question than it had been immediately prior thereto. For this reason it is unnecessary to consider whether the evidence sufficiently establishes that the polluted condition of the stream further reduced the value of said farm by killing the trees described in plaintiffs' petition or was the source of injury to the cattle also mentioned therein. If such evidence was entirely absent from the proof presented, this would not preclude the

plaintiffs from recovering the damages they sustained from the other injury which they alleged. The question before the trial court in ruling upon the defendants' demurrers to the evidence and motions for a general verdict in their favor was not whether the evidence sustained the plaintiffs' right to recover damages for all the injuries alleged, but was whether it sustained this right with reference to any of such injuries. See Hamilton v. Brown, 31 Okla. 213, 120 P. 950; Deming Inv. Co. v. Britton, 72 Okla. 145, 179 P. 468; Anderson v. Whitener, 127 Okla. 284, 261 P. 156; Sinclair Oil & Gas Co. v. Allen, 143 Okla. 290, 288 P. 981; Rockhill v. Congress Hotel Co., 237 Ill. 98, 86 N. E. 740, 22 L.R.A. (N. S.) 576. Consequently, our adoption of the defendants' views of the evidence would not be tantamount to a determination that the trial court erred in the rulings mentioned, nor warrant a reversal upon such grounds, of the judgment appealed from. Since these are the only specifications of error that said contentions are claimed to substantiate and it is not argued that the verdict and judgment constitute an improper, incorrect, or excessive assessment of damages for depreciation in the pasturage value of plaintiffs' farm, an examination of the record to determine whether there was proof of a causal connection between the defendants' pollution of the stream and the alleged injuries to plaintiffs' timber and cattle would serve no useful purpose herein.

The remainder of the defendants' argument is advanced in support of the contention that plaintiffs' injuries from the pollution of Black Bear creek commenced in the year 1925 and were obvious to them more than two years prior to the commencement of this action, and consequently their recovery of damages therefor is barred by the statute of limitations operative in such cases.

As a preface to this argument, counsel call our attention to the cases of Sinclair v. Allen, 143 Okla. 290, 288 P. 981; Roxana v. City of Pawnee, 155 Okla. 141, 7 P. 2d 663, and Roxana v. Dormire, 160 Okla. 262, 18 P. 2d 544, in which they claim it was judicially determined as late as January 24, 1933, that the same creek as the one involved herein was permanently polluted and land through which it flowed was permanently injured by said creek. While it might be said that in the cases cited the creek was regarded as permanently polluted, the import and scope of the opinions promulgated therein are not what counsel represent. In both of the cases cited wherein this court gave any expression which to any extent related to the permanency of the stream's condition, it was recognized that the term "permanent," when used to describe such a condition, as said in Union Oil & Mining Co. v. Bowman, 144 Okla. 54, 289 P. 296, is not "perpetual," "unending" or "unchangeable." In the latter case, the oil company defendant urged upon this court a view that is exactly opposite to the contention of the defendants herein and argued that "there can be no permanent injuries to a stream of water by reason of the escapement or drainage therein of a quantity of salt water. * * *" A portion of our opinion in Oklahoma City v. Page, 153 Okla. 285, 6 P. 2d 1033, clearly demonstrates the fallacy of confusing the character of a stream's contamination in regard to permanency with the character of the injuries resulting therefrom. From the judicial pronouncements referred to it will also be noted that a stream may be considered "permanently" polluted from a legal standpoint, when neither the condition itself nor the injuries flowing therefrom are everlasting in character. To deny that a stream once regarded as permanently polluted can thereafter become relatively pure is to disregard the operation of natural forces. It is only reasonable that when the proportion of fresh water to salt water in a polluted stream increases (whether from a curtailment of the flow of salt water or an increase in the flow of fresh water into it) the aggregate body of water therein be-

comes more suitable for drinking purposes. There is evidence in the present case which tends to show that this is what was occurring in Black Bear creek during a period that may be variously estimated at from several months to three or four years preceding July, 1935, so that by the latter date some of the farmers living along the stream in the vicinity of plaintiffs' farm were using it for watering their livestock. For the reasons we have mentioned, the evidence cited by defense counsel showing that the stream was polluted for several years before this transformation cannot be considered fatal to the plaintiffs' cause of action for damages they sustained when its salt water content again became so great that it was once more harmful to animals drinking therefrom.

In connection with portions of the evidence tending to prove that Black Bear creek was injurious to plant and animal life long before July, 1935, defense counsel also call our attention to the allegation in plaintiffs' petition that a portion of the timber described therein began to die in the "spring" of 1935. These portions of the record are made the basis for the argument that the injuries claimed by the plaintiffs were obvious more than two years before the filing of this action and hence under the rule followed in Richards v. Flight, 97 Okla. 9, 222 P. 564; Commercial Drilling Co. v. Kennedy, 172 Okla. 475, 45 P. 2d 534; Indian Terr. Ill. Oil Co. v. Klaffke, 178 Okla. 62, 61 P. 2d 669, and Pine v. Duncan, 179 Okla. 336, 65 P. 2d 492, recovery of damages therefor is barred by the statute of limitations prescribed for such claims. We have examined the record and find no conclusive proof that all of the injuries alleged by the plaintiffs were obviously permanent more than two years before this action was commenced. As we have hereinbefore indicated, the evidence on this issue was conflicting. According to some of the witnesses there was no appreciable difference in the extent to which Black Bear creek was polluted during the entire period between 1925 and 1937, while others testified to the effect that the water therein definitely improved and became fit for use again in 1935, but by 1937 had again become as valueless and harmful as it had been in 1925. Very few if any of the witnesses who testified as to these changes in the condition of the stream attempted to specify the exact date when they occurred, but the majority of them seem to have agreed that the second era of the stream's pollution began during one of the months following June, 1935. From our description of the testimony it can readily be seen that different conclusions could be drawn as to just when it became obvious that a portion or all of plaintiffs' claimed injuries were permanent. In establishing an evaluation of the farm's depreciation as a result of the pollution, counsel for the plaintiffs confined his interrogation to the exact two-year period immediately preceding the commencement of this action, and the court instructed the jury that plaintiffs' recovery should be limited to the damages they suffered during that period. From our examination of the evidence we cannot say that the jury erred in concluding, in effect, that at least a portion of the injuries plaintiffs alleged to have suffered from the defendants' pollution of the stream did not become obviously permanent until after July 10, 1935 (the beginning of said period), nor that such injuries were indistinguishable from those that may obviously have been permanent previous to said date.

As we have found no cause for reversal in either of the specifications of error urged by the defendants, the judgment of the trial court is hereby affirmed.

BAYLESS, C. J., WELCH, V. C. J., and HURST and DANNER, JJ., concur.