**HARDWARE MUTUAL CASUALTY COMPANY, a foreign insurance corporation, Plaintiff in Error,**

v.

**K. B. BAKER, Individual d/b/a Baker Motor Company, Defendant in Error.**

No. 41737.

Supreme Court of Oklahoma.

Feb. 13, 1968.

Ben A. Goff and Milton Moon, Oklahoma City, for plaintiff in error.

Woodrow McConnell, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

While defendant in error, hereinafter referred to as "plaintiff" was a retail dealer

in Pontiac automobiles at Healdton, one Ray Harrell, a salesman for him, started to see his barber, Lark Lamley, at Ratliff Corner, on June 1, 1963, driving a new 1963—Model Grand Prix Pontiac Coupe, belonging to plaintiff, to sell Lamley. Before reaching Ratliff Corner, the automobile was involved in a collision, almost demolishing it and injuring Harrell.

Plaintiff thereafter, in April, 1964, instituted the present action against plaintiff in error, hereinafter referred to as "defendant", to recover the retail price of the Pontiac in the amount of $4792.00, and attorneys fees and costs, alleging in his petition that he was insured against such loss by an insurance policy defendant had previously issued to him.

In its answer, defendant admitted having issued to plaintiff the subject policy, which was a "DEALERS AUTOMOBILE POLICY" in the amount of $60,000.00, but, among other defenses, it alleged, in substance, that, if liable for the loss, it was liable, under the terms of the policy, only for the "reasonable value" of the Pontiac; and it denied that such reasonable value was as much as $4792.00, or that this was the proper measure of plaintiff's loss.

In answer to one of the interrogatories issued and filed by defendant, as to the price plaintiff paid the Pontiac Division of General Motors Corporation for the auto, plaintiff answered: "* * * a total of $3766.66."

At the trial before a jury, in June, 1965, plaintiff introduced as his Exhibit 1, the subject Dealers Automobile Policy. The policy's "COVERAGE E", which is conceded to be applicable, reads, in part, as follows: "Loss to any automobile covered hereunder by collision of the automobile with another object * * *". The "EXCLUSIONS" portion of the policy states that the policy does not apply: "(K) to the insured's prospective profits or overhead charges of any nature." Paragraph "4" of

the "CONDITIONS" portion of the policy reads, in part, as follows:

"The limit of the company's liability for loss shall not exceed (1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss, nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind or quality with deduction for depreciation * * *".

Also included in plaintiff's evidence at the trial was his own testimony—given over the objection of the defendant—that the "actual cash value" of the new Pontiac was $4792.00. He also testified, among other things, that he paid cash for it; that, after the collision, it was brought to his garage where it remained 6 or 8 months before it was taken out of there by an adjuster for defendant. Plaintiff estimated that, after the collision, the new Pontiac had a value of about eight hundred or eight hundred and fifty dollars. His salesman, Harrell, testified, among other things, as a witness for plaintiff, that he priced the new Pontiac to the prospective customer at $4790.00, which was to be paid with a trade-in allowance on the customer's 1959 model Pontiac Bonneville, and $3700.00 in addition. Harrell further testified that the used car could have been resold for about $1100.00; and he estimated that the new Pontiac had a value of $1250.00, after being damaged in the collision.

After the two above-named witnesses had testified, plaintiff rested his case, and defendant orally interposed a general demurrer to plaintiff's evidence, its counsel stating as one of the grounds therefor that plaintiff had not "* * * under the terms of the contract (insurance policy) upon which he has based his cause of action, proven the proper element of damages, if any, that he would be entitled to." The court sustained this demurrer, and discharged the jury from further consideration of the case. Thereafter, in June, 1965, the trial court sustained the motion for new

trial filed by plaintiff, and defendant has perfected the present appeal from this ruling.

For reversal, defendant contends that the trial court correctly sustained its demurrer to plaintiff's evidence, and erred when it thereafter sustained plaintiff's motion for a new trial. Defendant's position generally is that in an automobile dealers policy, like the present one, the term "actual cash value", as applied to a unit in the dealer's stock of new cars, means the auto's "replacement cost" to the dealer, as evidenced by its factory delivered price, plus transportation charges and any expenses necessary to ready it for sale. In its argument, defendant attempts to draw a distinction between the meaning of "actual cash value", when used in that kind of a policy, and the same term, when used in a collision policy of an individual, in which latter instance, he concedes that the term means "market value", citing and discussing the annotation in 61 A.L.R.2d, beginning at page 711, entitled: "Test of criterion of 'actual cash value' under insurance policy insuring to extent of actual cash value at time of loss." Plaintiff, on the other hand, contends that this court adopted the "fair market value test" for automobile losses, under policies providing for payment of "actual cash value", in Connecticut Fire Insurance Co., etc. v. Youngblood, 199 Okl. 227, 184 P.2d 792, and that these terms should be synonymous, even when applied to dealers, citing Johnson v. Equitable Fire and Marine Insurance Co., 142 Mont. 128, 381 P.2d 778. (In this connection, see also McLeod-Nash Motors v. Commercial Credit Trust, 187 Minn. 452, 246 N.W. 17, 87 A.L.R. 296; International Harvester Co. of America v. Chicago, M. & St. P. Ry. Co., 186 Iowa 86, 172 N.W. 471 and McAnarney v. Newark F. Ins. Co., 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149, and compare the discussion of "actual cash value", "market value", and "market price" contained therein). More important to our determination in this appeal is the fact that plaintiff calls our attention to his evidence concerning his tentative sale of the new Pontiac here involved, and the price that was to be obtained for it.

■■■■ While we accept the premise for which defendant cites a quotation from Appleman's Insurance Law & Procedure, that, in cases like the present one, the plaintiff has the burden of proving the value of the automobile at the time of the loss, we do not agree that in the posture in which this case comes to us, it constitutes a proper test case for determining the issue of whether "market value", or "replacement cost", is the proper criterion in discharging this burden. We think that whatever may be the proper test, plaintiff introduced sufficient evidence of his loss to forestall proper sustaining of a general demurrer to it. This court has long followed the rule that if plaintiff's evidence shows he has sustained a loss, for which defendant is liable on the cause of action pleaded, it will withstand a general demurrer, even though he seeks a larger recovery than that to which he may be entitled. See Deming Inv. Co. v. Britton, 72 Okl. 145, 179 P. 468, cited in Shell Petroleum Corporation v. Kent, 187 Okl. 637, 105 P.2d 230, 232, 88 C.J.S. Trial § 235c; 53 Am.Jur., "Trial", § 432, note 17. Plaintiff's evidence unquestionably showed—in fact it seems to be conceded—that he suffered a loss under the subject policy, when the new Pontiac was damaged. This auto's replacement cost, while presumably less than the $4700.00 (for which plaintiff's evidence was to the effect that it was being sold) was included, or encompassed, in that larger amount. Said sale price, in addition to including the car's "f. o. b.", or factory, price, also presumably included the cost of transporting it from the factory to plaintiff's place of business, cleaning and servicing it, and other expenses necessary to make it ready for sale on the retail market, which costs defendant concedes plaintiff was entitled to recover. If this case was here on a challenge to a jury instruction, or a trial court ruling allowing plaintiff a greater recovery than that to which he was entitled, then this appeal might be termed a proper test of the

'question defendant attempts to get before us; but it is not. The trial court acted within his discretion in sustaining plaintiff's motion for a new trial, on account of his previous ruling on defendant's general demurrer to plaintiff's evidence. Here, there is no clear showing of manifest error in the order appealed from, and defendant has made no effort to show that the trial court abused his discretion in entering it. See Draper v. Lack, Okl., 339 P.2d 784, 787, discussing Armstrong v. Chickasha Cotton Oil Co., Okl., 258 P.2d 1174, and Ernest Wiemann Iron Works v. Hoerner Boxes, Okl., 332 P.2d 10.

The trial court's order and/or judgment is therefore affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY, HODGES and McINERNEY, JJ., concur.