### In re PRATT'S ESTATE.
### PRATT v. WRIGHT et al.

No. 20868. Opinion Filed April 12, 1932.

Rehearing Denied Nov. 22, 1932.

H. A. Hicks, for plaintiff in error.

Sigler & Jackson, Champion, Champion & Fischl, and Brown & Hopper, for defendants in error.

RILEY, J. Plaintiff in error appeals from a finding and decree of heirship in the administration of the estate of Martha Pratt, deceased, referred to in the case-made as Martha Pratt, Sr. The cause originated in the county court of Carter county in 1925. Eugene Wright filed a petition for appointment of herself as administratrix of the estate of Martha Pratt, deceased, who died intestate in Carter county September 6, 1925. Upon such petition Eugene Wright was appointed as administratrix and qualified as such. The property belonging to the estate was described in the petition as consisting of household goods of the value of $100, and a federal insurance policy on the life of Eugene Pratt, a soldier of the World War, in which the said Martha Pratt was the beneficiary. The unpaid balance on the insurance policy was valued at about $9,000.

About one year after her appointment, the county court entered an order releasing the United States Fidelity & Guaranty Company as surety on her bond, reciting in the order that no funds belonging to said estate had been collected by the administratrix, and no liability had accrued on the bond. Thereafter, on March 31, 1928, one Tom Perkins filed a motion to remove the said Eugene Wright as such administratrix, alleging that he was the next of kin of Martha Pratt, deceased, and entitled to letters of administration, and that the appointment of Eugene Wright had been made without notice to him, and also alleging the failure of Eugene Wright to qualify, and further alleging incompetency and neglect of duty, etc. He requested the appointment of Louis Fischl as administrator.

On April 2, 1928, Martha Pratt, Jr., filed a petition for revocation of the letters of administration of Eugene and prayed that letters of administration issue to her, alleging that she, Martha Pratt, Jr., was the sole surviving heir at law of Martha Pratt, Sr., alleging that she was a granddaughter of said deceased. A hearing was had in the county court on April 19, 1928, and the matter was taken under advisement. Thereafter on April 26, 1928, Eugene Wright filed in said court a petition to determine heirship wherein she alleged that Martha Pratt, Sr., left surviving her as her sole heirs the petitioner, Eugene Wright, Cora Lee Shelton, Tom Perkins, and Louis Perkins, Jr., and setting up that Martha Pratt, Jr., was claiming to be the sole heir, etc., and praying:

"The court to make and enter an order finally determining that the petitioner, together with Tom Perkins, Cora Lee Shelton, and Louis Perkins, are the sole and only heirs of Martha Pratt, deceased." An order was made setting this petition for hearing for May 17, 1928, at which time Martha Pratt, Jr., appeared and filed an "objection to final report and petition of distribution of Eugene Wright, administratrix." She specifically denied that Tom Perkins, Louis Perkins, Jr., Cora Shelton, and Eugene Wright were the next of kin and heirs at law of Martha Pratt, deceased, and further alleged:

"3. Martha Pratt alleges and states that upon the death of Martha Pratt in Carter county, Oklahoma, on the ___ day of November, 1925, she left surviving her as her next of kin protestant, Martha Pratt, a granddaughter, as the nearest of kin and the sole and only heir at law of her estate at the time of her death.

"4. Further pleading, protestant alleges and states that her mother, Ruth Pratt, was the daughter of Martha Pratt, deceased, and that her father was Nelson Pratt, died in the year 1919, and that upon the death of Martha Pratt she left no children, no husband, and this protestant as the sole and only grandchild surviving her at the time of her death and that she is the sole and only heir at law of Martha Pratt, deceased, and entitled to take all the estate of Martha Pratt, deceased."

She prayed that the report of Eugene Wright, administratrix, be rejected and her petition for distribution be denied and: "That this court find and declare that Martha Pratt, the protestant herein, is the sole and only heir at law to said estate and that the estate be distributed to her as the sole and only heir at law of Martha Pratt, deceased, and that she have all other and proper relief."

The whole matter was heard and taken under advisement until September 6, 1928, at which time the county court entered its finding, in part, as follows:

"That Martha Pratt, Sr., departed this life on the 6 day of September, 1925, and that she left surviving her as her sole and only heir at law Martha Pratt, Jr., and that said Martha Pratt, Jr., is entitled to the whole of the estate of said Martha Pratt, Sr.

"The court further finds that Eugene Wright has failed to qualify as administratrix and is not competent to administer said trust and should be and is hereby removed as such administratrix and Martha Pratt, Jr., being entitled to the appointment as administratrix and having waived said right and nominated and asked the court to ap-point Louis A. Fischl, as administrator, and the court finding said Louis A. Fischl a fit and proper person."

The county court entered an order revoking the letters of administration of Eugene Wright and appointed Louis Fischl as administrator. An appeal was taken to the district court, where the whole matter was heard de novo, resulting in a reversal of the findings of the county court as to who the heirs of Martha Pratt, deceased, were. The order removing Eugene Wright as administratrix and appointing Louis Fischl was affirmed. From these findings and orders Martha Pratt, Jr., brings this appeal.

There are ten assignments of error, but as they do not seem to be separately presented in the briefs of plaintiff in error, we will consider separately only assignments which call for such consideration.

The question of jurisdiction of the district court was raised upon the ground that the case-made did not contain or show any appeal bond in the appeal from the county court to the district court, but after the brief of plaintiff in error was filed the case-made was corrected so as to show the filing of the appeal bond within time, which disposes of that question.

The assignments relative to admission of certain evidence and the refusal to admit certain evidence offered by plaintiff in error are not presented in the brief and will be treated as abandoned.

The contention is made that the county court had no jurisdiction in an administration proceeding to determine heirship. We have set out somewhat at length the pleas filed by the parties in the county court. It will be observed that plaintiff in error in her objection to the final report and order of distribution of Eugene Wright specifically prays that the court find and declare that she is the sole and only heir at law of said estate and that the estate be distributed to her.

Section 1079, C. O. S. 1921, subdivision 7, confers jurisdiction upon the county court to order and regulate all distribution of property or estate of deceased persons.

Section 1384, C. O. S. 1921, provides:

"The county court having jurisdiction to settle the estate of any deceased person is hereby granted original jurisdiction to hear and determine the question of fact as to the heirship of such person, and a determination of such fact by said court shall be conclusive evidence of said question in all courts of this state. Provided, that appeals may be taken from said county court within the time and in the manner pro-

vided by law as in other probate matters. * * *"

'It is apparent from these provisions that the contention cannot be sustained.

It is suggested that the findings as to heirship are premature in that notice to creditors had not been given. This question was not raised in the county court or in the district court and no mention is made thereof in the motion for new trial nor in any assignment of error in the petition in error.

All other assignments go to the sufficiency of the evidence to sustain the findings and the conclusion of law based thereon. It is conceded that Martha Pratt, deceased, left no husband and children surviving her. It is also conceded that defendant in error Tom Perkins is a full brother and that Eugene Wright and Cora Lee Shelton are paternal half-sisters and Louis Perkins is a paternal half-brother of deceased, Martha Pratt, Sr. It is also conceded that Ruth Pratt was the daughter of Martha Pratt, deceased, and predeceased her mother, and that plaintiff in error, Martha Pratt, Jr., is the daughter of Ruth Pratt. Emmett Pratt was a son of Martha Pratt, deceased, and a full brother of Ruth Pratt. Emmett Pratt died in June, 1919, intestate, without having been married. Nelse Pratt was a husband of Martha Pratt, deceased, and father of Emmett and Ruth Pratt. He died in March, 1919, prior to the death of Emmett Pratt. In the administration proceedings upon the estate of Emmett Pratt, deceased, Martha Pratt, Sr., his mother, was decreed to be a sole and only heir. It is conceded, and the evidence conclusively shows, that Martha Pratt, Jr., plaintiff in error, was born to Ruth Pratt several years before her marriage and was born out of wedlock. Ruth Pratt, her mother, was married to one George Cherry in 1919, at which time Martha Pratt, Jr., plaintiff in error, was about eleven years of age. It is conceded that the said George Cherry was not the father of Martha Pratt, Jr.

The plaintiff in error bases her right to inherit upon the claim that Nelse Pratt, father of Ruth Pratt, was her father. That is, that she was begotten as a result of incestuous relations between father and daughter, Nelse Pratt and Ruth Pratt, and that said Nelse Pratt publicly acknowledged her as his child and took her into his family with the consent of his wife, and that thereby she became and was legitimized and was entitled to inherit as representative of and through her mother, Ruth Pratt. Considerable evidence was presented both for

and against the claim so made. We deem it unnecessary to discuss the evidence relative to who was the father of the said Martha Pratt, Jr. The trial court declined to find that Nelse Pratt was her father, and there was no error therein. It is conceded that the father and mother of Martha Pratt, Jr., never intermarried, and the trial court so found. The trial court found that Martha Pratt, Jr., was not an heir of Martha Pratt, Sr., because of the illegitimacy of Martha Pratt, Jr., and the provisions of the statute prohibiting her from representing her mother, Ruth Pratt, in inheriting from her mother's kindred. In this the court was correct. If the evidence of plaintiff in error and her witnesses be taken as true and it be conceded that Nelse Pratt was her father, and if it be true that he acknowledged her as his child, though not in writing, and took her into his family with the consent of his wife, that would not be sufficient to entitle her to inherit from Martha Pratt, Sr., as the representative of Ruth Pratt.

Section 11303, C. O. S. 1921, specifically provides that an illegitimate child "does not represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral, unless before his death his parents shall have intermarried, and his father, after such marriage, acknowledge him as his child, or adopts him into his family." Therefore, in order for plaintiff in error to represent her mother by inheriting from her mother's mother, it was essential that the father and mother of Martha Pratt, Jr., should have intermarried and thereafter the father acknowledge her as his child or adopt her into his family. It is conceded that no such marriage was ever consummated. The fact, if it be a fact, that Nelse Pratt acknowledged plaintiff in error to be his child would not be sufficient. Pulliam v. Churchman, 108 Okla. 290, 236 P. 875, is cited and relied upon by plaintiff in error, but is not in point. The estate of Ruth Pratt is not here involved. Martha Pratt, Jr., could inherit whatever estate Ruth Pratt, her mother, left. Had Ruth Pratt survived her mother, then the plaintiff in error would be entitled to inherit, as the estate would then come to her directly from her mother, but such is not the case.

The trial court found that at the death of Martha Pratt, Sr., she left surviving her as her sole and only heirs, Tom Perkins, a full brother, Eugene Wright and Cora Lee Shelton, paternal half-sisters, and Tom Perkins, Jr., a paternal half-brother.

All the parties are negroes and descend-

ants of former slaves. Plaintiff in error contends that none of the brothers or sisters or half-brothers and sisters of Martha Pratt, deceased, could inherit from her for the reason that they were either illegitimate children or descendants of an illegitimate child, viz., their father, Louis Perkins. She contends that Louis Perkins (for convenience hereinafter referred to as Louis Perkins, Sr.), the father of Martha Pratt, Sr., and of Tom Perkins, her brother, was an illegitimate child, the offspring of a negro slave mother and her white master; that he was married to one Eliza, a negro slave, about 1850, and that under the law as it then existed, Eliza being a negro slave, was incapable of entering into a valid marriage contract, and, therefore, the children of said pretended marriage, Tom Perkins and Martha Pratt, nee Perkins, were both illegitimate, and that for that reason Tom Perkins cannot inherit from his full sister, Martha, and that Eugene Wright, Cora Lee Shelton, and Louis Perkins, Jr., children of Louis Pratt, Sr., by a second marriage contracted after the general emancipation, could not inherit because of the illegitimacy of their father, Louis Perkins, Sr. The evidence shows that Louis Perkins, Sr., and his first wife, Eliza, were married either in Alabama or Louisiana about 1850, and that Tom Perkins and Martha Pratt, nee Perkins, their children, were born of that union before slavery ceased to exist, but the evidence further shows that they continued to live together as husband and wife many years after the close of the Civil War and that the children of their marriage, particularly Tom Perkins, lived with them in their home and were recognized as their children. They moved to Texas and lived as husband and wife until the death of Eliza, which occurred about 1880. After her death, Louis Perkins, Sr., moved to Indian Territory and there married his second wife, and to that union Eugene, Cora Lee, and Louis, Jr., were born. There can be no question as to the legitimacy of these three children.

As to the first marriage. although it may have been invalid when entered into, and at the time the two children, Tom and Martha, were born, it afterwards became valid by their continuing to live together as husband and wife many years after slavery ceased to exist, and when there was no impediment to their marriage, said marriage ripened into and became a valid common-law marriage, which has always been recognized in this state. Thereby the children of that union, if illegitimate before, became legitimate.

There is no law which prevents legiti-

mate children of an illegitimate father from inheriting from or through such father.

The findings and decree of the trial court were correct, and as the appointment of Louis Fischl as administrator of the estate of Martha Pratt, deceased, was not disturbed in the district court, and that part of the judgment or decree not being appealed from, the finding and decree of the district court are hereby affirmed.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., absent.

_____

KORNEGAY, J. (dissenting). I have examined the entire record. The facts in the case were: That a soldier took out insurance, was killed in France in 1919. Under the terms of the policy, his mother, Martha Pratt, was made the beneficiary. The Veteran's Bureau allotted to his mother a monthly allowance out of it. For just how long, the record does not show, but at the time of her death, after the passage of the amendment of 1925, making the proceeds belong to the estate of the insured, it appears from the record that an administration was had on the soldier's estate in Carter county, with a view of collecting the money, and that as a preliminary the administrative officers desired some showing as to who the heirs were of the dead soldier. They evidently had most of that data in Washington, as they had been paying the monthly installments to the mother, but more data was desired. The result was that the county court, evidently for that purpose, made a finding that some uncles of the soldier were the interested parties. Later, however, a finding was made that the mother, Martha Pratt, was entitled to the insurance, as being the sole heir. She had died prior to that finding, however, and subsequently an administration was sought on the estate of Martha Pratt, probably with a view of one administrator receiving the funds from the other administrator. In the administration of the mother's estate, Martha Pratt, Sr., referred to, these uncles sought to name the administrator, and one of them went so far as to get an order for letters of administration, but never fully qualified. Later a granddaughter of Martha Pratt, the daughter of Martha Pratt's daughter, the granddaughter being an illegitimate, filed protest and requested the appointment of an administrator, by the name of Fischl, of the estate of her grandmother on her mother's side. The county court found that this grandchild was the sole heir, and would be entitled to the proceeds of the

property, and hence was entitled to nominate the administrator, which she did.

From this an appeal was taken by the uncles of the soldier to the district court. There were several attorneys connected with it, and some of the proof offered as a basis for sustaining the judgment of the county court is startling. The district judge reversed the county court on the subject of who the heir was, though the legal reason for it does not appear in the record further than a statement as follows:

"The court further finds that Martha Pratt, Jr., being the illegitimate child of Ruth Pratt, the daughter of Martha Pratt, deceased, is not an heir of the said Martha Pratt, deceased, she being prohibited by the statutes of Oklahoma on account of her illegitimacy from representing her mother in inheriting an estate from her mother's kindred."

The order took from Martha Pratt all interest in the estate, but was silent on the proposition as to whether or not Louis Fischl, who had been named by the county court, should continue as the administrator. Later a supplementary journal entry was made continuing Louis Fischl as administrator.

The order of the district court has been affirmed by this court and application for rehearing is here. It appears to me, after a thorough examination, that the judgment of this court, affirming that judgment, is wrong, and that the judgment of the district court, reversing the county court, is wrong. I am unable to see, in the light of the governing statutes, that the fact that Martha Pratt was an illegitimate child of Ruth Pratt, who, had she survived her mother, would have succeeded to the estate, renders her, Martha Pratt, Jr., incapable of inheriting. The decision as given does not follow the statute, nor does it follow the reasoning part of Bahnsen v. Burl, 95 Okla. 191, 218 P. 846, or the result arrived at. The third section of the syllabus is as follows:

"Martha Burl, an illegitimate child of Cora Nero, died intestate February 2, 1909, leaving surviving no issue, mother, father, or brother, but leaving an illegitimate sister, Mary Burl, a child of the same mother. Held, that Mary Burl, the illegitimate surviving child, was an heir of the deceased mother, and as such inherited the property of her illegitimate sister under section 11304, Comp. Stat. 1921."

The statute provides that in all cases an illegitimate child inherits from its mother. The applicable statutes are sections 11303, 11304, 8057, and 8054, C. O. S. 1921, as follows:

"11303. Inheritance by illegitimate child. Every illegitimate child is an heir of the person who in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child; and in all cases is an heir of his mother; and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he does not represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral, unless before his death his parents shall have intermarried, and his father after such marriage, acknowledge him as his child, or adopts him into his family; in which case such child and all the legitimate children are considered brothers and sisters, and on the death of either of them, intestate, and without issue, the others inherit his estate, and are heirs, as hereinbefore provided, in like manner as if all the children had been legitimate: saving to the father and mother, respectively, their rights in the estate of all the children in like manner as if all had been legitimate. The issue of all marriages null in law, or dissolved by divorce, are legitimate.

"11304. Inheritance from illegitimate child. If an illegitimate child, who has not been acknowledged or adopted by his father, dies intestate, without lawful issue, his estate goes to his mother, or, in case of her decease, to her heirs at law."

"8057. Legitimation of child. The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The status thus created is that of a child adopted by regular procedure of court. The foregoing provisions of this article do not apply to such an adoption."

"8054. Rights of adopted children. A child so adopted shall be deemed, for the purposes of inheritance by such child, and his descendants and husband or wife, and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation."

In all cases, under this statute, the living illegitimate child is the heir of the mother, and represents the mother, so as to take what would have been distributed to the mother by succession. By the law of nurture, the child that has nursed its moth-

er's breast, whether begotten after a marriage ceremony or before, naturally should succeed to what that parent has or is entitled to. But during the days of ecclesiasticism there grew up the idea that such a child could not inherit, as being "filius nullius," the son of nobody. Another one of the rules, largely drawn from the feudal system, was that nobody could succeed to the inheritance unless he be of the blood of the first purchaser. This naturally prevented inheritance through affinity, though the closest ties should be the tie of man and wife, and the tie that most strongly binds them is a child, descended from the loins of each.

Evidently the Legislature that framed the succession statutes that we have was familiar with those rules, and was trying to provide, and did provide, a scheme by which the husband and wife inherited from each other, and that the husband's side of the house, in a proper case, through the medium of the child that he had begotten by his wife, could succeed to property originating in the mother's side of the house in certain cases. The Legislature provided a scheme by which a person, who was the father of an illegitimate child, could by a declaration, prepared in a certain way, make his illegitimate child his limited heir. Section 11303, C. O. S. 1921, set out above, is one of the provisions. Down to the first semicolon, the Legislature had in mind the proposition that a father who had illegitimate children, so far as he was concerned, could designate an heir. The second subdivision provides that, in all cases, every illegitimate child is an heir of his mother. The term "every illegitimate child" is the subject about which the assertion of heirship as to the mother is being made.

The third subdivision is a conjunctive one, providing for the illegitimate child, who has been declared an heir by the father, to inherit from the father as though he were legitimate. The clause relied on in the opinion for denying an illegitimate child full right of heirship, and others claiming through him, is the provision of the statute, as follows:

"* * * and in all cases is an heir of his mother; and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he does not represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral, unless before his death his parents shall have intermarried, and his father after such marriage, acknowledge him as his child, or adopts him into his family."

The result of such adoption is declared as follows:

"* * * in which case such child and all the legitimate children are considered brothers and sisters, and on the death of either of them, intestate, and without issue, the others inherit his estate, and are heirs, as hereinbefore provided, in like manner as if all the children had been legitimate; saving to the father and mother, respectively, their rights in the estate of all the children in like manner as if all had been legitimate. The issue of all marriages null in law, or dissolved by divorce, are legitimate."

It is very plain that the language used there has reference to a dead illegitimate person and not a living one, and consequently does not limit the right of a living illegitimate to possess and enjoy what his mother would have enjoyed had she succeeded.

I am not able to see on what theory a law enacted in the words of this, making the child the heir of his mother in all cases, though he does not know who his father is, could be so transformed as to prevent him representing his mother in cases where she is dead, and the estate comes to her in the line of blood representation. Most clearly, what the statute has referred to is the using of a dead illegitimate child as a conductor through which to transfer property to those who are not of the blood of the side of the house where the property originated, unless the father and mother marry before the child dies. Section 11304, C. O. S. 1921, set out above, provides for inheritance from an illegitimate child.

There are innumerable decisions on the subject, but no statute that makes the illegitimate the heir in all cases of its mother in identical words appears to be directly discussed in the line of decisions on it. However, the reasoning here is counter to that of the Supreme Court of the United States in the case of Lessee of Henry Brewer v. Jacob Blougher et al., 10 L. Ed. 408, 418. That was a case as revolting in aspect as the present, with the exception that in that case a marriage had taken place between a man and his own child. In the present case, startling argument was made of legitimation, because the father begat the child by his own daughter, that is now surviving the mother and the father both, and claims the soldier's insurance, and legitimation occurred because the child was taken into the house of its father, and thereby adopted and legitimated.

In the United States Supreme Court case, the child never could be legitimated. In the present case the child was never legiti-

mated, but was alive and was claiming to be the heir of its grandmother through the medium of its mother, who was legitimate. The statute, construed by the Supreme Court, is set out in the opinion, as follows:

"The Act of 1825 (ch. 156, of Maryland), provides: 'That the illegitimate child or children of any female, and the issue of any such illegitimate child or children, be, and they are hereby declared to be, able and capable, in law, to take and inherit both real and personal estate from their mother, or from each other, or from the descendants of each other, as the case may be, in like manner as if born in lawful wedlock.' Then follows a proviso, which has no application to the present question."

The language of the court is as follows:

"This case depends upon the construction of the Act of Assembly of Maryland passed at December session, 1825 (ch. 156), entitled, 'An Act relating to illegitimate children.' By this act of Assembly, 'the illegitimate child or children of any female, and the issue of any such child or children,' are declared to be capable in law 'to take and inherit both real and personal estate from their mother, or from each other, or from the descendants of each other, as the case may be, in like manner as if born in lawful wedlock.'

"It appears from the record that a man by the name of John Sloan had several children, who were the issue of an incestuous connection of a shocking character. He conveyed a tract of land called 'Grassy Cabin,' situated in Alleghany county, in the state of Maryland, to John Joseph Sloan, one of these children. John Joseph Sloan, the grantee, died about the year 1832, intestate, and without issue; and seized in fee-simple of this land. Two brothers and one sister, the issue of the same incestuous intercourse, survived him; and they conveyed the land to Jacob Blougher and Daniel Blougher, the defendants in error. * * *

"The proviso, like the expressions in the enacting clause, shows that the Legislature were not looking to children whose parents would probably marry, but to children whose parents never would marry; and they make no distinction between the issue of those who could not, and of those who would not become lawfully joined in wedlock. If from any cause whatever the parents were never married, the children were illegitimate; and all illegitimate children, under this act of the Assembly, may inherit from their mother and from each other. It follows that the tract of land called 'Grassy Cabin,' upon the death of John Joseph Sloan, descended to his brothers and sister, before mentioned, and the plaintiff is not entitled to recover."

In that case, the illegitimate brothers and sister were held to get the property through their relation on the mother's side. The language used by that same court in the case of Stevenson's Heirs v. Sullivant, 5 L. Ed. 83, in a similar case, is as follows:

"The 3rd question is, are the appellants, as bastards, capable of inheriting from Richard Stevenson?

"The 18th section of the law of descents, under which this question arises, is as follows:

"'In making title by descent, it shall be no bar to a party that any ancestor through whom he derives his descent from the intestate, is, or hath been, an alien. Bastards also shall be capable of inheriting or of transmitting inheritance on the part of their mother, in like manner as if they had been lawfully begotten of such mother.'

"In the construction of this section, it is never to be lost sight of, that the appellants are to be considered as bastards, liable to all the disabilities to which the common law subjects them, as such, except those from which the section itself exempts them. Though illegitimate, they may inherit and transmit inheritance, on the part of the mother, in like manner as if they had been lawfully begotten of the mother. What is the legal exposition of these expressions? We understand it to be, that they shall have a capacity to take real property by descent immediately or through their mother ·in the ascending line; and transmit the same to their line as descendants, in like manner as if they were legitimate. This is uniformly the meaning of the expressions, 'on the part of the mother or father,' when used in reference to the course of descent of real property, in the paternal or maternal line. As bastards, they were incapable of inheriting the estate of their mother notwithstanding they were the innocent offspring of her incontinence, and were, therefore, in the view of the Legislature, and consonant to the feelings of nature, justly entitled to be provided for out of such property as she might leave undisposed of at her death, or which would have vested in her, as heir to any of her ancestors, had she lived to take as such. The current of inheritable blood was stopped in its passage from, and through the mother, so as to prevent the descent of the mother's property and of the property of her ancestors, either to her own illegitimate children, or to their legitimate offspring. The object of the Legislature would seem to have been to remove this impediment to the transmission of inheritable blood from the bastard in the descending line, and to give him a capacity to inherit in the ascending line, and through his mother. But although her bastard children are, in these respects, quasi legitimate, they are, nevertheless, in all others bastards, and as much, they have, and can have, neither father, brothers, or sisters. They cannot, therefore, inherit from Richard Stevenson, because, in contemplation of law, he is not their brother; and even if

he were their brother, they would not inherit their estate under this section, on the part of their mother, but directly from Richard, the descent from brother to brother being immediate. Upon no principle, therefore, can this section help the appellant's case. His estate never vested in the mother, so as for her bastard children to inherit from her; nor did it pass through her in the course of descent to the bastard children."

It will be observed in that case that it was an inheritance from the father that was sought to be obtained, but the court discussed the meaning of terms with reference to the illegitimate child inheriting through and from his mother, using the following language:

"* * * Though illegitimate, they may inherit and transmit inheritance, on the part of the mother, in like manner as if they had been lawfully begotten of the mother. What is the legal exposition of these expressions? We understand it to be, that they shall have a capacity to take real property by descent immediately or through their mother in the ascending line; and transmit the same to their line as descendants, in like manner as if they were legitimate."

Some of the language in that case was criticized in the case later decided by the Supreme Court of Missouri, of Moore v. Moore, 58 L. R. A. 451, which held that the illegitimate child could use its mother as a medium of reaching the property of a grandmother. The case discusses the various decisions on the subject and the reasons for the enactments, and the syllabus is as follows:

"The illegitimate child of a woman who dies before her brother is capable of inheriting her share of the brother's estate, under a statute making bastards capable of inheriting, on the part of their mother, in like manner as if they had been lawfully begotten of her."

That case is here applicable. However, the construction of every statute depends on its own wording, and in view of the variety of decisions on the subject, it is fair to presume that our Legislature provided that in all cases the illegitimate is the heir of the mother for the purpose of preventing further discussion on the matter. It is fair to presume that "before his death," in the proviso relied on by the court, could not refer to a living person in the connection used.

I think that there can be little doubt that the money in this case belongs to Ruth Pratt, and I think that the language of the Supreme Court of the United States in the late decision in the case of Singleton v. Cheek, reported in 284 U. S. 493, 52 S. Ct. 257, 76 L. Ed. 419, and quoted in the response, governs. It is as follows:

"All installments, whether accruing before or after the death of the beneficiary named in the certificate of insurance, as a result, became assets of the estate of the insured upon the instant of his death, to be distributed to the heirs of the insured in accordance with the intestacy laws of the state of his residence, such heirs to be determined as of the date of his death, and not as of the date of the death of the beneficiary. The state courts, with almost entire unanimity, have reached the same conclusion."

I am unable to see why Ruth Pratt cannot represent her mother, when the statute prescribes that "Every illegitimate child * * * in all cases is an heir of his mother." If it be claimed that the inheritance traces from the grandmother, the general statute provides that her issue gets the property over collateral kindred where there is a sole survivor. Here Martha Pratt, Sr., left surviving no husband or child, and her "issue" surviving was Martha Pratt, Jr. The latter portion of the first subdivision of section 11301, C. O. S. 1921, is as follows:

"* * * but if there be no child of the decedent living at his death, the remainder goes to all of his lineal descendants; and if all the descendants are in the same degree of kindred to the decedent they share equally, otherwise they take according to the right of representation: Provided, that if the decedent shall have been married more than once, the spouse at the time of death shall inherit of the property not acquired during coverture with such spouse only an equal part with each of the living children of decedent, and the lawful issue of any deceased child by right of representation. If the decedent leave no surviving husband or wife, but leaves issue, the whole estate goes to such issue, and if such issue consists of more than one child living or one child living, and the lawful issue of one or more deceased children, then the estate goes in equal shares to the children living, or to the child living, and the issue of the deceased child or children by right of representation."

I think that Martha Pratt, Jr., a child of a dead sister of the insured and a granddaughter and sole descendent of Martha Pratt, Sr., who was the sole heir of the soldier, is entitled to the property as representing her mother, and the uncles of the soldier are not, and that rehearing should be granted, and the decision of the county court should be affirmed, the district court reversed.

Note.—See under (2), annotation in L. R.

A. 1916E, 659; 64 A. L. R. 1124; 3 R. C. L. 739 et seq.; (3), 18 R. C. L. 408.