## LIVERPOOL & LONDON & GLOBE INS. CO. v. McLAUGHLIN.

No. 9022—Opinion Filed July 23, 1918.

(174 Pac. 248.)

**1. Insurance — Authority of Solicitor — Change in Policy—Validity.**

L. & L. & G. Ins. Co. issued an insurance policy on a stock of merchandise to H. M. on October 7, 1914, and attached thereto a rider known as form No. 6. On the 30th day of October, 1914, the agent of L. & L. & G., at the direction of the insurance company and without the knowledge or consent of H. M., attached a rider known as form No. 1, the conditions of which were entirely different from those embodied in form No. 6. Held, that the policy as issued on October 7, 1914, was a valid and binding contract when issued and could not be changed or altered by the insurance company without the knowledge or consent of H. M.

**2. Insurance — Solicitors — Agency.**

Any person who solicits insurance and procures application therefor in all matters relating to said applicant and the policy issued, is the agent of the company issuing the policy, and not the agent of the insured.

**3. Appeal and Error — Review — Harmless Error.**

When it appears from the evidence that a verdict is so clearly right that, had it been different, the court should have set it aside, such verdict will not be disturbed here for the reason that there is error found in the instruction.

(Syllabus by Davis, C.)

Error from District Court, Johnston County; J. H. Linebaugh, Judge.

Action by Mrs. Hattie McLaughlin against the Liverpool & London & Globe Insurance Company. Verdict for plaintiff. A judgment overruling a motion for a new trial was rendered, and defendant brings error. Affirmed.

Scothorn & McRill, for plaintiff in error.

Cornelius Hardy, for defendant in error.

Opinion by DAVIS, C. The parties to this action will be referred to as they appeared in the lower court; that is, the plaintiff in error as defendant, and the defendant in error as plaintiff. This is an

action arising on a fire insurance policy issued by the defendant to the plaintiff on a stock of merchandise located at Tishomingo, Okla. The policy in question was issued on the 7th day of October, 1914, for the sum of $2,150, and in consideration of the issuance of said policy by the defendant the plaintiff paid as a premium therefor the sum of $16.12. When this policy was issued by the defendant to the plaintiff, it was left in the possession of Robert Muldrow, who was the agent of the defendant company. This policy is the form prescribed by Rev. Laws 1910, § 3481. When this policy was issued by Robert Muldrow on the 7th day of October, 1914, there was attached to said policy a rider known as form No. 6. The property covered by said policy is fully described and set out in said rider as follows:

"$150.00 on her store furniture and fixtures, counters, shelving, showcases, carpets, mirrors in use in her storeroom, while contained in her dwelling above described or its additions," and "$2,000 on her dry goods, ladies' ready-to-wear suits, cloth for dressmaking, ladies' hats, laces, trimmings, hosiery, gloves, buttons, thread, and other merchandise not more hazardous, such as is usually kept for sale in a ladies' dressmaking or ready-to-wear store, while contained in her dwelling above described or its additions."

This policy was left in possession of Mr. Muldrow, for the reason that he had an iron safe in which it could be deposited and thereby protected from fire. On or about the 30th day of October, 1914, Mr. Muldrow was notified by the insurance company that he had made a mistake in attaching rider form No. 6 to said policy, and that he should have attached form No. 1, and upon the receipt of this information Mr. Muldrow attached form No 1 to said policy. The evidence and pleadings show that form No. 1 was attached on the 30th day of October, 1914, and that the plaintiff had no knowledge of any change having been made in said policy, and did not know of such change until after the fire, which occurred on the 27th day of January, 1915. The material difference between the two forms is that form No. 6 is applicable for dwellings, household furniture, and barn, and form No. 1 is applicable for mercantile buildings, fixtures, and stores, and all classes of towns, and form No. 1 provides, among other things:

'The assured will take an itemized inventory of stock hereby insured at least once in each calendar year, and unless such inventory shall have been within twelve (12) calendar months prior to the date of this policy, the same shall be taken in detail within thirty (30) days after said date, or this policy shall be null and void from and after the expiration of said thirty (30) days."

And it is also provided:

"The assured will keep a set of books, which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales, and shipments of such stock, both for cash and credit, from the date of the inventory provided for in the first section of this clause, and during the continuance of this policy."

And it is further provided in form No. 1:

"That the assured keep such books and inventory securely locked in a fireproof safe at night and at all times when the building mentioned in this policy, or the portion thereof containing the stock described therein, is not actually open for business, and in the event of a failure on the part of the insured to comply with this provision, that the entire policy shall become null and void, and no recovery can be had on said policy in case of loss."

The answer of the defendant in this case sets forth that those provisions contained in form No. 1 had not been complied with by the plaintiff, and that by reason thereof the policy issued on the 7th day of October, 1914, was not in force and effect on the date of the fire, and that by reason thereof no recovery can be had. The reply of the defendant sets forth that form No. 1, upon which the defense is based, was never made a part of the policy of contract of insurance between the plaintiff and defendant, but was attached to said policy of insurance on the 30th day of October, 1914, after the issuance and delivery by defendant to plaintiff, and plaintiff's acceptance of said policy of insurance as issued and delivered on the 7th day of October, 1914, and that said rider form No. 1 was attached to said policy without the knowledge or consent of the plaintiff, and that plaintiff has never at any time consented to, ratified or confirmed the action of the local agent of the defendant in so attaching said rider to said policy. On these issues the case was submitted to a jury, and a verdict was returned in favor of the plaintiff and against the defendant for the sum of $2,150, with interest from the 14th day of May, 1915, at the rate of 6 per cent. A motion for a new trial was duly filed and overruled by the trial judge. From the judgment overruling the motion for a new trial, the defendant prosecuted an appeal to this court by petition in error.

There are various assignments of error, but under our view of the case it is nec-

essary to consider only two propositions. The first proposition to be considered is the effect on the policy as issued on the 7th day of October, 1914, in attaching rider form No. 1 on the 30th day of October, 1914, by Robert Muldrow, the agent of the insurance company. It is contended by the defendant that Mr. Muldrow was acting as the agent of the plaintiff when he attached form No. 1 to said policy, and that the plaintiff is bound by his acts in the matter, and is now estopped from denying that the policy to which this form is attached is in truth and in fact the policy that was in effect at the time the loss occurred. With this contention we are unable to agree. Section 3481, Rev. Laws 1910, provides that no policy shall be written except upon the form provided in section 3482. Under subdivision No. 6, section 3481 permits riders to be attached to the statutory form. When the policy herein sued upon was issued on the 7th day of October, with form No. 6 attached thereto, it became a legal and binding contract between the plaintiff and the defendant, and the fact that said policy was left with Robert Muldrow, the agent of the defendant, for the purpose of safe-keeping, did not empower Mr. Muldrow, as the agent of the defendant, to make any material change in the form of said policy without the knowledge and consent of the plaintiff. There is no merit in the contention that Mr. Muldrow was acting as the agent of the plaintiff in making this change. Section 3462, Rev. Laws 1910, is as follows:

"Solicitors Agent of Company.—Any person who shall solicit and procure an application for insurance shall in all matters relating to such application for insurance and the policy issued in consequence thereof, be regarded as the agent of the company issuing the policy and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever."

The evidence in this case shows that the change was made in this policy at the suggestion of the defendant and by its direction, and that the plaintiff herein was not consulted in reference to said change and did not know of such change until after the stock of merchandise was destroyed by fire and demand had been made on the defendant for a settlement. It will be seen, from the provisions contained in two forms, that the requirements are entirely different. By the provisions of form No. 6, that was attached to the policy when the same was issued on the 7th day of October, 1914, the plaintiff was not required to take an inventory of her stock of merchandise and was not required to keep her books and inventory in an iron safe. The conditions imposed in form No. 1 are much more burdensome than in form No. 6 and constitute a material change in the policy. In the case of Taylor v. Insurance Co. of North America, 25 Okla. 92, 105 Pac. 354, 138 Am. St. Rep. 96, the following rule is announced, with reference to the power of local agents, with whom a policy is left by the assured for the purpose of safe-keeping, to wit:

"The local agent being in possession of the policy as bailee for the assured, his marking the same 'Canceled' and returning same to the company, without the consent or knowledge of the assured, does neither constitute a waiver or estoppel nor a consent or acquiescence."

Before the plaintiff in this case should be held to the terms prescribed in form No. 1, it was necessary to notify her that such material change had been made, so that she might be given an opportunity to comply with the provisions contained in said form. Section 3482, Rev. Laws 1910, prescribed the form of policy that shall be issued in this case, and it is not necessary to the validity of this form of policy to attach any form of riders thereto, and when the policy in this case was issued on the 7th day of October, 1914, with form No. 6 attached thereto, the same became a legal and binding contract between the parties to this action.

It is earnestly contended by counsel for defendant that the rule announced in the case of Brown v. Connecticut Fire Insurance Co., 52 Okla. 392, 153 Pac. 174, is controlling in this case. It will be seen from a reading of the foregoing case that the question involved in the case at bar was not involved in this case. In the Brown v. Connecticut Fire Insurance Co. case, the only question for determination before the court was the validity of a provision that prohibited the assured from incumbering the property covered by the policy during the life of the policy, and there was no contention that the form of the policy as originally issued had been altered by the insurance company; hence the two cases are in no sense parallel.

Section 988, Rev. Laws 1910, provides the manner in which a written contract may be altered, which is as follows:

"A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

This being true, when the policy herein sued upon was issued by the defendant and accepted by the plaintiff, it became a legal

and binding contract, and was not subject to alteration, except in the manner prescribed by the foregoing provision of our statute.

The next error complained of is the giving of the following instruction by the court, to wit:

"The court instructs you that, if you find by a fair preponderance of the evidence in this case that the defendant company on the 7th day of October, 1914, issued a policy of insurance to the plaintiff and delivered the same to her, and that the premium thereon was paid, and that the stock of merchandise covered by said policy was owned by the plaintiff, and that the same on the 27th day of January, 1915, was destroyed by fire, and that thereafter plaintiff made proof of loss to the company as provided in said policy, and that at the time of said fire said policy was in full force and effect, then it would be your duty to find for the plaintiff for the amount up to three-fourths of whatever you find for the plaintiff from the evidence in this case was the value of the property destroyed, but in no event could your verdict be for more than $2,150, with interest at 6 per cent. from 60 days after she furnished proof of loss, the amount of said policy; otherwise, your verdict should be for the defendant."

The foregoing instruction is criticized by counsel for defendant for the reason that the court instructed the jury to return a verdict for a sum not to exceed three-fourths of the value of the property. This instruction is subject to the criticism offered. The measure of damages for the loss of the property in question was the cash value of the property destroyed, at the time immediately preceding such loss and at the place where the property was located; but it does not necessarily follow that because the instruction is, strictly speaking, an incorrect statement of the law applicable to the measure of damages, that the cause should be reversed. The rule in this state is that, although an erroneous instruction is given, if it appears from the evidence that the verdict is so clearly right that, had it been different, the court should have set it aside, such verdict will not be disturbed merely for the reason that there is error found in the instruction. In the case of Whitcomb v. Oiler, reported in 41 Okla. 331, 137 Pac. 709, the following rule is announced.

"Where it appears from the evidence that a verdict is so clearly right that, had it been different the court should have set it aside, such verdict will not be disturbed merely for the reason that there is error found in the instruction."

In the case of Horton v. Early, reported

in 39 Okla. 99, 134 Pac. 436, 47 L. R. A. (N. S.) 314, Ann. Cas. 1915D, 825, the same rule is announced, and in the body of the opinion it is stated:

"It is urged that the court erred in instructing the jury as set out in instruction No. 9. The instruction is open to the objection urged against it, as it is a well-recognized principle of law that, in the absence of a statute or agreement, there is no implied warranty that leased premises are suitable for the purposes for which they are demised, or that the lessor will keep the property in repair. * * * While the giving of the instruction was erroneous, it does not necessarily follow, for that reason alone, the judgment of the trial court should be reversed, for, where it appears from the evidence that the verdict is so clearly right that, had it been different, the court should have set it aside, such verdict will not be disturbed merely on account of the fact that some one of the instructions given misstated the law. It is said in Hughes on Instructions to Juries. § 243: 'So where the evidence, standing uncontradicted, is sufficient to sustain the verdict rendered, error in the giving of instructions will be regarded as harmless. Thus, where the plaintiff's cause of action is clearly established by the admissions of the defendant, there can be no ground for complaint in the giving or refusing instructions, even though they are erroneous.'"

While the court should have instructed the jury that the measure of damages in the case at bar was the cash value of the property at the time immediately preceding such loss at Tishomingo, Okla., yet we do not feel that it was such error as necessitates a reversal of this case. There was no special instruction offered by counsel for the defendant on this phase of the case, and if there is no material conflict in the evidence as to the value of the property destroyed, we do not feel that the error complained of is of sufficient magnitude to warrant a reversal of this cause.

It is next contended that the court erred in giving general instruction No. 3, which is as follows:

"It is claimed by the defendant that there was attached to said policy on the 30th day of October, 1914, what is known as rider form No. 1, which contained certain provisions for the taking of an itemized inventory by the plaintiff at least once in each calendar year, or if not taken within 12 months prior to the date of said policy is to be taken in 30 days after said date, and for the keeping of a set of books which would clearly and plainly present a complete record of the business transactions, including all purchases, sales, and shipments, and that said books and invoices should be kept

securely locked in a fireproof safe at night, and at all times when said business was open to keep them where they would not be exposed to fire, and to produce them for the inspection of the company, and that in the event of the failure of the assured to do this the policy would become null and void.

"With regard to this phase of the case the court instructs you that the policy as issued and delivered to the plaintiff on the 7th day of October, 1914, was a valid and binding contract and that if the said contract was afterwards changed by the defendants or its agents in its terms and provisions without the knowledge or consent of the plaintiff, and without acquiescence on her part, that then she would not be bound by the terms of what is known as rider No. 1 to said policy, but she would be bound by all of the conditions and provisions which were contained in said policy at the time the same was executed and delivered to the plaintiff herein."

The criticism offered against this instruction is that the court in effect charged the jury that the agent of the company was not the agent of the assured with regard to any of the transactions connected with the writing and keeping of the policy, and it was the agent's duty to go to the assured and read to her the terms of the policy. We believe that the foregoing instruction is a correct statement of the law under the facts in this case. While it may not have been the duty of Mr. Muldrow to take the policy to the plaintiff herein and read the same to her, it was certainly his duty to inform her of any material changes that had been made in said policy at the instance and request of the defendant, and in order that any such changes might be made binding on the plaintiff it was certainly essential that she should be advised as to what changes had been made, and in the absence of any such knowledge she could not be bound thereby.

These are the material errors urged by the defendant for a reversal of this cause. We have made a careful examination of the entire record, and are unable to find any error committed by the trial court that is so prejudicial to the rights of the defendant as to warrant a reversal of this cause. We are led to the conclusion that the cause was fairly tried in the lower court and that the verdict of the jury is amply sustained by the evidence.

We therefore recommend that the judgment be in all things affirmed.

By the Court: It is so ordered.