## ELMER CURTIS FUGATE v. STATE.

No. A-10405. April 18, 1945.
(158 P. 2d 177.)

John W. Tillman and Fred A. Tillman, both of Paw-huska, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and J. D. Plunkett, Co. Atty., of Bartlesville, for defendant in error.

BAREFOOT, P. J. Defendant, Elmer Curtis Fugate, was charged in the district court of Washington county with the crime of grand larceny, was tried before the court without the intervention of a jury, found guilty, and his punishment assessed at six months in the State Penitentiary, and he has appealed.

Defendant was charged by information with the larceny, on May 2, 1942, of "one car wheel, one (1) 6:00-16 automobile tire, and one inner tube, all of the approximate value of $25, all the personal property of Harold O'Daniel."

The error complained of presents a novel question, and one that has never been before this court. Defendant made no defense as to his guilt, the only contention being that the value of the property stolen was less than $20, and that he should, therefore, be convicted of petit larceny, and not of grand larceny. His contention was that the ceiling price placed upon the property by the United States Government prior to May 2, 1942, the date of the larceny, should be and was the standard set to establish the value of the property stolen.

It is admitted that if this contention is true, the value

of the property would be under $20, and the defendant should only be convicted of petit larceny, and not grand larceny.

The state in seeking to establish the value of the property, introduced two witnesses.

Harold O'Daniel, the owner of the property, testified, giving a full description of the wheel, tire and tube that had been stolen from his 1940 Pontiac car. He testified that the tire and tube were in first class condition, and that in his opinion the wheel, tire, tube, lug bolts and hub cap stolen were of the value of between $25 and $30.

Guy Belt, an automobile dealer of Bartlesville, who had been in business a little more than 20 years, was the other witness for the state. He testified that he had examined the property alleged to have been taken from Mr. O'Daniel's car, and that in his opinion the value of the wheel, tire, tube, lug bolts and hub cap was between $28 and $30. On cross-examination he stated that his opinion was based upon the fair market value of the property. He placed a specific value on the tire of "between $14 and $17 with good tread;" a value of $4 on the inner tube, $1.30 on the hub cap, and 25 cents on each lug bolt, and $10.50 on the wheel. He did not know the value of the wheel, as he had not bought or sold any second-hand wheels.

With the testimony of these two witnesses, the state closed its case, and the defendant offered the evidence of three witnesses, two from the city of Tulsa, and one from Bartlesville. These witnesses were experienced automobile dealers, and experienced in the handling of used parts of automobiles. He also introduced in evidence schedules set up by the United States Government which

fixed the ceiling prices on used tires and tubes effective on March 22, 1942. These witnesses testified fully as to these schedules, and without quoting that evidence, it was established that the price of a second-hand tire such as here involved would be a maximum of $8.10 and the tube $1.50.

The above statement is a fair presentation of the facts. The question is, what should be the rule now in determining the value of the property under the statutes of this state, 21 O. S. 1941 § 1704, which provides:

"Grand larceny is larceny committed in either of the following cases:

"1. When the property taken is of value exceeding $20.

"2. When such property, although not of value exceeding $20 in value, is taken from the person of another.

"Larceny in other cases is petit larceny."

The trial court, in passing sentence on the defendant, stated:

"If you take the Government's price list on that and the proven price on the things that are not in the Government's list, then there isn't more than $20 worth of goods that were taken. I am not disposed to take that list. I just don't believe that could be the law.

"The Government's listing of prices at which tubes and tires will be sold, the maximum, is not for the purpose of ascertaining or determining or stating the value of those things, not by any means, but the purpose is to keep the prices from going up. It is a price control proposition. So far as being in a combative mood as to the Government's purpose and its means of carrying out that purpose, I have no such disposition. I think it is wise, sound and prudent. I am for it. But the thing my mind combats, Mr. Tillman, is our law in this state is such

you have to take those prices as set out by the Government as the value of things in the case here. My mind still combats that. I just can't think that is the criterion."

The statute above quoted has been in force and effect in this state for many years, and has been under consideration by this court many times. The rules and regulations of the Price Administration have only been in force during the war, and have never been under consideration by this court. In the statement of the Price Administrator, as of March 16, 1942 (the charge here being May 2, 1942), which was introduced in evidence in this case, it is said:

"In the judgment of the Price Administrator the prices of used tires and tubes have risen and are threatening further to rise to an extent and in a manner inconsistent with the purposes of the Emergency Price Control Act of 1942 [50 U.S.C.A. Appendix § 901 et seq.] The Price Administrator has ascertained and given due consideration to the prices of used tires and tubes prevailing between October 1 and October 15, 1941, and has made adjustments for such relevant factors as he has determined and deems to be of general applicability. So far as practicable, the Price Administration has advised and consulted with the representative members of the industry which will be affected by this regulation.

"In the judgment of the Price Administrator, the maximum prices established by this Regulation are and will be generally fair and equitable and will effectuate the purpose of said Act. A statement of the consideration involved in the issuance of this Regulation has been prepared and is issued simultaneously herewith.[1]

"Therefore, under the authority vested in the Price Administrator by the Emergency Price Control Act of 1942, and in accordance with Procedural Regulation No.

---

"1 The statement of considerations has been filed with the Division of Federal Register."

1,[2] issued by the Office of Price Administration, Maximum Price Regulation No. 107 is hereby issued.

"§ 1315.1351 Maximum prices for used tires and tubes. On and after March 16, 1942, regardless of any contract, agreement, lease, or other obligation, no person shall sell or deliver and no person in the business of buying or selling used tires or tubes shall buy or receive any used tire or tube, at prices higher than the maximum price set forth in Appendices A and B hereof, incorporated herein as §§ 1315.1360 and 1315.1361; and no person shall agree, offer, solicit or attempt to do any of the foregoing. The provisions of this section shall not be applicable to sales or deliveries of used tires or tubes to a purchaser if prior to March 16, 1942 such used tires or tubes had been received by a carrier, other than a carrier owned or controlled by a seller, for shipment to such purchaser."

We think the above statement justifies the conclusion which the trial court reached when he said:

"The Government's listing of prices at which tubes and tires will be sold, the maximum, is not for the purpose of ascertaining or determining or stating the value of those things, not by any means, but the purpose is to keep the prices from going up. It is a price control proposition."

As above stated, the statute of this state above quoted was enacted long prior to the enactment of the rules and regulations of the Price Administration, and with no reference thereto.

The evidence in this case clearly demonstrates that the fair market value of this property is beyond the ceiling price set by the Price Administrator, and we do not think that the ceiling price as set by the Price Administrator should be controlling in construing the statute

---

"2 7 F.R. 971."

with reference to whether the value of the property is such as to constitute grand or petit larceny. This ceiling price was fixed only for the purpose of preventing inflation during the period of time in which this country is at war. By the issuing of this order, no consideration was given as to the real value of property, but it was solely for the purpose of preventing its sale beyond a maximum price to prevent inflation. And it does not seem reasonable to us that this maximum price should be applied to statutes such as above quoted, dealing with the larceny of property in this state. It rather occurs to us that the established principles with reference to value which have been in force and effect in this state for many years should continue to be the standards by which it may be determined whether the value of the property is such as to constitute grand or petit larceny.

This court in the case of Hoffman v. State, 24 Okla. Cr. 236, 218 P. 176, 177, in construing the above statute, quoted with approval from the case of Filson v. Territory, decided by the Territorial Supreme Court, where it was said:

" 'The reasonable market value * * * is the true criterion for determining the grade of larceny.' It has been held in other jurisdictions that the word 'value,' when used in a statute relating to larceny, is equivalent to the term 'market value.' It follows, then, that the expression 'market value' relates to buying and selling, so that another equivalent expression might be said to be 'reasonable selling price.' Vol. 3 Words & Phrases, Series, pp. 300-302; Vol. 4 Words & Phrases, Second Series, 'Value'; 17 R.C.L. 'Larceny,' 3."

The above cases are cited with approval in the case of Carson v. State, 30 Okla. Cr. 438, 236 P. 627.

This ceiling price as now indicated, in the above

order of the Price Administrator, will only be in force during the National emergency, and it is subject to change at any time. We think it would not be proper to establish a rule of value as to stolen property that might be changed at different times. It would give one desiring to commit larceny an opportunity to steal property, the value of which would be far in excess of the ceiling price set by the Price Administrator, yet would fall below the value of $20, the dividing line set by the statute of this state between grand and petit larceny. It would place a changeable value upon property so that when stolen today, it might come within the value constituting grand larceny; if stolen tomorrow, it would come within the value constituting petit larceny.

We are of the opinion that the reasonable market value of the property as decided by the cases from this court in construing the above statute should be the guiding principle in determining the value of the property under the larceny statute above quoted.

Having reached this conclusion, the question of the reasonable market value of the property was a question of fact for the jury. The evidence of the state placed the value beyond $20. The witnesses of the defendant did not attempt to testify as to the reasonable market value of the property. Their testimony as to the value of the property was based only upon the ceiling price established by the rules prescribed by the Price Administrator. The court was right in coming to the conclusion that the defendant was guilty of grand larceny, and not petit larceny.

For the reasons above stated, the judgment and sentence of the district court of Washington county is affirmed.

JONES, J., concurs.  DOYLE, J., not participating.