## BETTS v. HITCHCOCK.

### No. 5734.

Court of Civil Appeals of Texas. Amarillo.
Nov. 9, 1946.

Robert Ogden, of Dallas, for appellant.
Bailey & Milam, of Dallas, for appellee.

PITTS, Chief Justice.

Appellee, Elizabeth Hitchcock, sued appellant, E. C. Betts, D/B/A Betts Automotive Service, for damages done to her automobile which she alleged was returned to her in a damaged condition several days after she had parked it at Betts' parking lot.

The trial was to a jury on special issues, the only issues pertinent to this appeal being those concerning a reasonable market value of the automobile in Dallas County, Texas, at the time appellee left it with appellant on August 2, 1945, and at the time it was later returned to appellee by the sheriff of Hopkins County, Texas. Upon the verdict of the jury the trial court rendered judgment for appellee in the sum of $500. from which judgment an appeal was perfected to the Court of Civil Appeals of Dallas County and the same was transferred to this Court by the State Supreme Court.

It is stipulated that the non-warranty ceiling price of the automobile in question on August 2, 1945, before it was damaged and as the same had been fixed by the Office of Price Administration, was $1,099. The record reveals that appellee was permitted by the trial court, over the objections of appellant, to offer evidence before the jury showing the value of the automobile at said time to be between $1,500. and $1,750. and that the jury found its value at the said time to be $1,500.

Appellant presents three points of error, variously stated, all of which relate to the question of the reasonable market value of the automobile. It is admitted by both parties, however, that the controlling question presented on this appeal is whether or not the ceiling price of the automobile, as fixed by the Office of Price Administration, was conclusive in a suit for damages as to its reasonable market value on August 2, 1945, before it was damaged. It is admitted by appellant that if such ceiling price "has nothing to do with the market value just prior to the damage, then the trial court did not err."

On August 2, 1945, ceiling prices had been previously established by the Office of Price Administration by virtue of authority granted in the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, §§ 901–946. The purpose of such Act is set out as follows in Section 901: "(a) It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this Act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, hoarding, manipulation, speculation, and other disruptive practices resulting from abnormal market conditions

or scarcities caused by or contributing to the national emergency; to assure that defense appropriations are not dissipated by excessive prices; to protect persons with relatively fixed and limited incomes, consumers, wage earners, investors, and persons dependent on life insurance, annuities, and pensions, from undue impairment of their standard of living; to prevent hardships to persons engaged in business, to schools, universities, and other institutions, and to the Federal, State, and local governments, which would result from abnormal increases in prices; to assist in securing adequate production of commodities and facilities; to prevent a post emergency collapse of values; to stabilize agricultural prices in the manner provided in section 3 (section 903 of this Appendix); and to permit voluntary cooperation between the Government and producers, processors, and others to accomplish the aforesaid purposes."

Section 942 of the Act provides that: "Definitions as used in this Act—

"(a) The term 'sale' includes sales, dispositions, exchanges, leases, and other transfers, and contracts and offers to do any of the foregoing. The terms 'sell', 'selling', 'seller', 'buy', and 'buyer', shall be construed accordingly.

"(b) The term 'price' means the consideration demanded or received in connection with the sale of a commodity."

■ It has often been held that an act of this nature should be strictly construed in order that it will not, in its limited sense, be extended beyond its plain meaning and will not be applied to cases not clearly within its purview. This Act has been so construed.

■ The same issue here raised was raised in a very similar case decided by the Austin Court of Civil Appeals in the case of M-K-T Ry. Co. v. Jaffee Cotton Products Mfg. Co., Inc., 193 S.W.2d 986, 988. That was a damage suit that grew out of the shipment of machinery and the difference in the reasonable market value of the machinery before its shipment and afterwards was an issue there. The question of whether or not the reasonable mar-

ket value of the machinery in question was fixed by the Office of Price Administration was an issue in that case. In construing the purpose of the Emergency Price Control Act the court there held that the ceiling prices fixed by the Office of Price Administration were not ordinarily competent evidence of market value and the court further states that such ceiling prices were fixed for the purpose of holding prices of products down "where the demand was greater than the supply, and to prevent inflation." In speaking further of such ceiling prices and their admissibility in evidence to fix market values of property in a damage suit such as this, the court said: "They would not, of course, be conclusive on such issue; and would be no deterrent to proof otherwise that such market value of the articles involved, because of their peculiar nature, age, use, depreciation, etc., was less than the ceiling price promulgated for such articles."

Other jurisdictions have given the purpose of the said Emergency Price Control Act the same construction as did the Austin Court. The Supreme Court of Iowa so held in the case of Ross Produce Co. v. Thompson, 20 N.W.2d 57, 60. That court had before it a suit for damages growing out of a collision between two motor vehicles and it was there claimed that the ceiling price of the truck before it was damaged as fixed by the Office of Price Administration controlled the question of its reasonable market value. The court said: " 'The paramount aim of price control legislation is to protect the nation's economic structure against inflation in the interests of national security and defense.' Bowles, Adm'r. of Price Administration v. Texas Liquor Control Board, 1945, 5 Cir., 148 F.2d 265, 266. Its purpose is to place a ceiling limit on prices in 'sales' of commodities, services, etc., or transactions reasonably within the scope of the term, 'sales'. It was intended to prevent the unrestricted and uncontrolled delivery, or disposal of these commodities, etc., at the highest prices obtainable. Surely it was never enacted to place a ceiling upon recoveries for property losses under insurance policies, or for recoveries for injury to or destruction of property by tort-

feasors or other wrongdoers, and thus serve to relieve them of making just compensation for injuries caused by their wrongdoing."

Such construction of the said Act is likewise supported by the case of General Exchange Ins. Corp. v. Tierney, 5 Cir., 152 F.2d 224, and Fugate v. State, Okl.Cr.App., 158 P.2d 177, 157 A.L.R. 1299. We have found no decisions to the contrary.

It appears to us that the Emergency Price Control Act was obviously intended to authorize the fixing of ceiling prices of commodities that were offered for sale on the market as the term "sale" has been defined by law and that it was not its purpose to fix the reasonable market value of property when a loss had been sustained by reason of damages done to the property and a damage suit filed as a result of such loss in order to determine only the amount of damages sustained.

The record before us does not reflect any reversible error and the judgment of the trial court is therefore affirmed.