CONNECTICUT FIRE INS. CO. v. YOUNGBLOOD.

No. 32723. Sept. 9, 1947.

Rehearing Denied Sept. 30, 1947.

*184 P. 2d 792.*

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, for plaintiff in error.

Little & Hamill, James C. Hamill, and Reuel W. Little, all of Madill, for defendant in error.

HURST, C.J. This is a suit on a collision insurance policy. From a judgment in favor of the plaintiff, Beverly Ray Youngblood, and against the insurer, the Connecticut Fire Insurance Company, the company appeals.

The policy was issued May 11, 1944, to Emale Webb, mother of plaintiff, and covered the period to May 11, 1945. By an endorsement on the policy signed by the resident agent of the company dated September 1, 1944, the plaintiff was made beneficiary or insured. The car was destroyed by a collision with a train at Wynnewood, Okla., on March 13, 1945. The plaintiff was seriously injured in the accident, and was in the hospital for some 90 days as a result of the injuries sustained. The next day after the accident, plaintiff's mother and step-father sold the wrecked car as salvage for $50 and one of the tires for $21. This was done without plaintiff's knowledge, though he later ratified the sale.

1. The defendant argues that the plaintiff failed to prove that he owned the insured automobile, and that the automobile insured was not the one that was destroyed.

The policy of insurance described the car as a 1940 Ford coupe, motor No. 18-5293200. The evidence discloses that the car destroyed was a 1939 Ford coupe, motor No. 18-5293200. The only discrepancy, therefore, was in the yearly model.

Boyd Davis, stepfather of the plaintiff, testified that the car that was destroyed and that was insured belonged to the plaintiff, and that the title certificate issued by the Oklahoma Tax Commission listed the plaintiff as owner. In January, 1945, Davis, as agent of the plaintiff, filed with the tag agent an application to have the car registered in plaintiff's name. The company introduced no evidence tending to establish that the car did not belong to plaintiff.

The finding of the court that the car that was destroyed was the one that was covered by the insurance policy and that the car belonged to plaintiff is supported by the evidence.

2. The defendant next contends that the plaintiff failed to establish that proof of loss was made or waived.

The record discloses that on April 27, 1945, the attorney for plaintiff wrote defendant's resident agent at Durant, Okla., giving the number of the insurance policy and advising that the car was demolished on March 13, 1945, by a train at Wynnewood, and of the disposition made of the salvage and of the serious condition of plaintiff, and concluded the letter as follows:

"Therefore, I would like for you to consider this as a notice of loss and if there are any particular forms that this company has to be filled out, I would appreciate your mailing me whatever are necessary."

The agent for the company did not object to the form of the proof of loss and sent no forms to be filled out, and entered into negotiations for settlement of the loss and filled out a proof of loss based upon the O.P.A. ceiling price of $555, but plaintiff's attorney refused to sign the proof of loss for said sum. Under these circumstances, we are of the opinion that the defendant should be deemed to have waived the requirement of the policy for formal proof of loss and to have accepted the letter as sufficient compliance with the terms of the policy, under authority of Century Insurance Co. v. Rice, 193 Okla. 418, 144 P. 2d 953.

3. The company next argues that the sale of the car the day after the accident prevented defendant from inspecting the car and from having an appraisal made of the car and from taking the car at the appraised value, as provided in the policy.

Under the terms of the policy, either party had the right, on written demand, to have an appraisal made of the loss, but the company made no such demand. The car was sold as salvage without the knowledge or consent of the plaintiff while he was in the hospital. The adjuster for the company was advised where the wreckage was, and there is testimony that he saw it. The testimony discloses that the car was a complete wreck. The defendant introduced no evidence tending to establish that the value of the car after the collision was more than the sum for which it was sold. Before the plaintiff ratified the sale of the car as salvage, the adjuster of the company knew that the car had been sold as salvage and made no objections to such sale. Under these circumstances, the defendant cannot complain of the lack of appraisal and

the loss of its right to take the car at its appraised value. 29 Am. Jur. 930.

4. Appellant finally argues that the judgment for $950 is excessive. The witnesses for the plaintiff testified that the fair cash market value of the car, without any restrictions, at the time the same was destroyed, was from $1,150 to $1,200. On cross-examination these witnesses testified that the value of a 1939 Ford coupe, at the time the car was destroyed as shown by the Red Book, which is issued by the Automobile Dealers' Association of America, was $660, and the O.P.A. listed price was $538 without warranty and $673 with warranty.

The policy of insurance insured the car at its "actual cash value", less $50 deductible. The term "actual cash value" has a well defined meaning, and is defined in Black's Law Dictionary (3rd Ed.) p. 46, as follows:

"The fair or reasonable cash price for which the property could be sold in the market, in the ordinary course of business, and not at forced sale; the price it will bring in a fair market after reasonable efforts to find a purchaser who will give the highest price."

The price at which a car or other property was listed by the Office of Price Administration, commonly referred to as the O.P.A., was an arbitrary one established to prevent inflation, and does not govern in case of insurance contracts, damage suits for injury to or destruction of property, or in determining the value for the purpose of establishing whether the theft of the property constitutes grand or petit larceny. Fugate v. State, 80 Okla. Cr. 200, 158 P. 2d 177, 157 A.L.R. 1299 (larceny prosecution); General Exchange Ins. Corp. v. Tierney, 152 Fed. 224 (insurance policy); Sun Ins. Office v. Rupp, 64 Fed. Supp. 533 (insurance policy); Betts v. Hitchcock (Tex.Civ. App.) 197 S.W. 2d 878 (damage suit); Ross Produce Co. v. Thompson, 236 Iowa, 863, 20 N.W. 2d 57 (damage suit); Louisville & N.R. Co. v. Blanton, 304

Ky. 127, 200 S.W. 2d 133 (damage suit). Likewise, the values fixed in the Red Book are mere estimates.

The real problem is recognized and stated in Sun. Ins. Office v. Rupp, above:

"The insured found himself in the anomalous position that settlements and adjustments for loss arising under policies of insurance were specifically excluded from the provisions of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix §901 et seq., yet by that Act the normal market value of all equipment like that insured had been completely destroyed and all prices arbitrarily fixed by law, which it would seem rendered inapplicable the construction placed by the courts upon the phrase 'actual cash value.'

"We are faced with the problem that there was no market price for such equipment other than the ceiling prices established by the Office of Price Administration, and the very Act which created those ceiling prices specifically exempted adjustments under policies of insurance from the provisions of the Act. Had the owner of this property gone out into the open market and sold the equipment for an amount in excess of these ceiling prices, as heretofore stated, he would have been liable not only to the person to whom he sold it for severe penalties, but would also have subjected himself to criminal prosecution.

"We must therefore find some other way of arriving at the actual cash value of the destroyed property."

The evidence in the instant case as to the value of the car in an unrestricted market is not completely satisfactory in that it is not clear whether the evidence is of the value of a 1939 or 1940 model car, but in the policy itself it is clearly stated that the original insured paid $900 for the car in May, 1944, just prior to the establishment of price controls on passenger cars in June, 1944.

In Sun Ins. Office v. Rupp, supra, it was held that where the ceiling prices as fixed under the Emergency Price Control Act did not properly reflect the actual cash value of the tractor and trailer at the time they were destroyed, the "actual cash value" of the equipment, within policies insuring them against loss by collision or upset, should be fixed at sums paid by insured in 1941 and 1942, respectively, in purchasing the equipment.

We agree with the reasoning of the court and the rule stated in the last-cited case. We think it is reasonable to assume that, under all the facts and circumstances of the instant case, the actual cash value of the automobile was, at the time it was destroyed, equal to its value at the time it was bought in May, 1944. There is no evidence in the record of the condition of the automobile, or its depreciation since it was purchased, which tends to show this value to be unfair or unreasonable.

The insured is entitled to recover from the insurer $900 less $50, in accordance with the terms of the policy, and less $71, which the insured realized from the sale of the wreckage and the tire, or $779.

The judgment is affirmed on condition that the plaintiff, within 15 days from the receipt of the mandate herein by the trial court, files a remittitur for the amount of $171, otherwise, the judgment will stand reversed and remanded for a new trial.

DAVISON, V. C.J., and RILEY, BAYLESS, WELCH, CORN, and LUTTRELL, JJ., concur.