**ROYER v. DEIHL et al. (two cases).**

Nos. 558, 559.

Municipal Court of Appeals for the
District of Columbia.

Nov. 12, 1947.

Milton S. Kronheim, Jr., of Washington,
D.C. (F. Joseph Donohue and Joseph A.
Kaufmann, both of Washington, D. C., on
the brief), for appellant.

No. 558

Albert F. Beasley, of Washington, D. C.,
for appellee.

No. 559

Edwin A. Swingle, of Washington, D.
C. (Ernest A. Swingle, of Washington, D.
C., on the brief), for appellees.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

The appeal in this case is from a judg-
ment recovered by the appellee James R.
Deihl against the appellant Frederick L.
Royer for damages to the appellee's auto-
mobile and other small incidental items re-
sulting from a collision of the cars driven
by the respective parties.

The assignments of error on appeal may be reduced to three, namely, (1) that the trial court (which sat without a jury) erred in allowing a police officer to testify as to certain conclusions reached by him upon arriving at the scene of the accident; (2) that the trial court erred in allowing a mechanic to testify as to the value of the Deihl automobile, and (3) that there was insufficient evidence to support the finding on the value of the Deihl automobile.

The accident occurred shortly after midnight on a rainy night at the intersection of Maryland Avenue and Fourth Street, Northeast. At this point Maryland Avenue, running in a northeasterly direction, is interrupted by Stanton Park, the park being bounded on the west by Fourth Street, Northeast, and on the south by C Street south which joins Maryland Avenue at this point. Appellee Deihl, accompanied by his wife, was proceeding south on Fourth Street and appellant Royer was proceeding northeast on Maryland Avenue. The evidence was undisputed that the Royer car crashed into the Deihl car which ended up against a tree near the southeast corner of the intersection, while the Royer car remained practically stationary at the point of impact.

With respect to the testimony of the officer, objection was made to several statements made by him regarding his conclusions as to how the accident happened. The admission of the following statements is relied upon by appellant as constituting error: "Upon arrival I learned that there was an accident at that particular time, and examination of the cars disclosed that the car travelling east on Maryland Avenue struck the car which was going south on Fourth Street; it hit it broadside and drove it completely over the southwest (sic) curb, against a tree which was located about ten feet (objection)." Also: "* * * Investigation disclosed that the car which was travelling east had to be the striking vehicle and drove the car which was travelling south completely (objection)." Also: "Investigation disclosed that there were no skid marks from either car, except the car which was pushed to the southwest corner, there was a mark on the pavement there, on the street which showed that car must have been pushed. The car was lodged against a tree which was about ten feet south of the southeast curb of Fourth and Maryland Avenue; the car having struck the tree and the left side was completely telescoped, along with the right side of the vehicle involved."

Other testimony had shown that the officer had arrived at the scene almost immediately after the accident and that when he arrived neither car had been moved. It was proper, of course, for him to describe what he found but it was improper for him to state his conclusions as to what had happened. It appears, however, that such conclusions so far as material, were practically the same as testimony given by appellant himself. For example, appellant after describing the events leading up to the accident and his observation of the Deihl car testified: "I crashed into him with the front left fender and bumper of my car." At another point he testified that his own car stopped at the point of impact. He then said "Immediately I got out of the car and went over to where the other car was against a tree." He also stated that when the two cars came together the front of his car struck the right rear of the Deihl car. Subsequently he stated that "I mean it hit from a big broadside." Again: "The Deihl car swerved sideways and hit a tree on this corner right here." He stated further that it was fifteen feet from the point of impact to the point where the Deihl car came to rest and also that when the Deihl car came to rest on the southeast corner it had been turned completely around so that it was facing in the direction from which it had come.

■ The principal issue in the case so far as liability was concerned was which of the automobiles entered the intersection first. The testimony of the officer did not deal with this issue. His conclusions that appellant's car was the striking vehicle, that such car hit the other broadside, that appellee's car was turned around and ended against a tree were all confirmed by appellant. The only statement made by the officer not otherwise confirmed was that appellee's car was "pushed". Considering all the other evidence we conclude that such statement was immaterial. It is clear,

therefore, that the error in the admission of the officer's testimony to which objection was made, was harmless.

With respect to the testimony regarding the value of the Deihl automobile, the evidence was undisputed that this car, a 1941 Chrysler "New Yorker," was purchased by appellee only four or five hours before the accident as a used "warranted" car for $1,725; that the automobile when sold was in "A-1" condition, had four brand-new tires, had just been reconditioned, that the paint was unblemished, that it was equipped with a radio, heater and fluid drive transmission; that the insurance company named as use plaintiff in the action and which had been subrogated to appellee's claim except as to $50, had paid appellee $1,675 on account of the loss of the car on a $50 deductible insurance policy; that such settlement had been made on the basis of the OPA ceiling price; that the insurance representative who had made the settlement on a value of $1,725 for the car had checked the ceiling price in effect at the time; a garage man who examined the Deihl automobile after the accident testified that it was such a total wreck that it was not worth repairing; that the insurance company had sold the wreckage for $550. Furthermore the OPA bill of sale was admitted in evidence. No objection was made to any of this evidence.

After the receipt of such evidence an "estimator" from an automobile repair shop was permitted to testify that $1,725 was the "warranted" OPA price for a used automobile of the type involved at the time of the accident. This witness admitted that he did not have independent knowledge of such OPA price but that in testifying he was using what was described at a "NADA" book which was not an official publication.

It is undisputed that if an automobile is practically destroyed or so completely destroyed as not to be susceptible of repair, then the measure of damages is its reasonable market value immediately before the accident, less its salvage value;[1] also that where the value of an article of personal property is in issue the inquiries should be confined to its market value at the time of the accident, such market value being that price as would result from fair negotiations between an owner willing to sell and a purchaser desiring to buy,[2] also that the purchase price of the automobile is one of the elements to be taken into consideration in arriving at the value.[3] Here, since the automobile was purchased immediately prior to the accident, the purchase price is of more than usual importance as showing market value because obviously no element of depreciation could enter into the question over such a short period of time. When a new automobile is sold some depreciation in price may ordinarily result immediately on use, but this is not true of a car sold, as this one was, as a used car. Furthermore, we take judicial notice of the fact that at the time of this sale the prices of automobiles generally were governed by OPA prices and that such prices were below what would otherwise have been the market value. As a matter of fact it has been the rule that the owner of the destroyed automobile is entitled to recover more than the OPA ceiling price, if the latter is less than the reasonable market value.[4]

We agree with appellant that the evidence of the estimator as to the OPA price, taken as it was from an unofficial book, was not admissible but the insurance company official had already testified without objection that settlement had been made

[1] 6 Blashfield, Cyclopedia of Automobile Law, Perm.Ed., Part 1, § 3414.

[2] Brooks-Scanlon Corp v. United States, 265 U.S. 106, 124, 44 S.Ct. 471, 68 L. Ed. 934.

[3] Bailey v. Ford, 151 Md. 664, 135 A. 835.

[4] Tierney v. General Exchange Ins. Corp., D.C.N.D. Tex., 60 F.Supp. 331, affirmed, 5 Cir., 152 F.2d 224; Zuanich v. Manufacturers Casualty Co., D.C.W.D. Wash., 65 F.Supp. 1011; Louisville & N. R. Co. v. Blanton, 304 Ky. 127, 200 S.W. 2d 133; Ross Produce Co. v. Thompson, 236 Iowa 863, 20 N.W.2d 57; Betts v. Hitchcock, Tex.Civ.App., 197 S.W.2d 878; Southern Ry. Co. v. Farmer, 74 Ga.App. 329, 39 S.E.2d 714; Fugate v. State, 80 Okl.Cr. 200, 158 P.2d 177, 157 A.L.R. 1299; Anstine v. McWilliams, 24 Wash.2d 230, 163 P.2d 816.

by his company with appellee upon the basis of $1,725, representing the OPA price on this particular car. No evidence on the subject was offered by appellant. It results that the admission of the testimony of the estimator was merely cumulative and therefore harmless. There was ample independent evidence to support the finding of value.

We have examined the other assignments of error and conclude they are without merit.

Affirmed.