238 F.2d 949
 FIRST NATIONAL INSURANCE COMPANY OF AMERICA, a corporation of Seattle, Washington, Appellant,
v.
Ella NORTON, H. Mead Norton and Sam Norton, Jr., Appellees.
FIDELITY-PHENIX FIRE INSURANCE COMPANY OF NEW YORK, a corporation, New York, New York, Appellant,
v.
Ella NORTON, H. Mead Norton and Sam Norton, Jr., Appellees.
The FARMERS ALLIANCE INSURANCE COMPANY, a corporation of McPherson, Kansas, Appellant,
v.
Ella NORTON, H. Mead Norton and Sam Norton, Jr., Appellees.
The LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY, a corporation of Liverpool, England, Appellant,
v.
Ella NORTON, H. Mead Norton and Sam Norton, Jr., Appellees.
JERSEY INSURANCE COMPANY OF NEW YORK, New York, Appellant,
v.
Ella NORTON, H. Mead Norton and Sam Norton, Jr., Appellees.
FIREMENS INSURANCE COMPANY, a corporation of Newark, New Jersey, Appellant,
v.
Ella NORTON, H. Mead Norton and Sam Norton, Jr., Appellees.
 Nos. 5353-5358.
 United States Court of Appeals Tenth Circuit.
 November 13, 1956.
 Rehearing Denied December 17, 1956.
 
 Walter D. Hanson, Oklahoma City, Okl. (Clarence P. Green, Oklahoma City, Okl., on the brief), for appellants.
 Kenneth Abernathy (of Abernathy & Abernathy), Shawnee, Okl., for appellees.
 Before HUXMAN, MURRAH and PICKETT, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 The plaintiffs, as owners and occupants of Lots 5, 6, 7, 8 and 9 of Block 26 in Shawnee, Oklahoma, brought this action against the defendant insurance companies on nine separate insurance policies to recover damages caused by fire to the building located on the premises. The legal description in the different policies did not refer to all of the lots upon which the building was located, and the insurance companies denied liability for any damage to a portion of the building which was not located on the lots described in the different policies. The plaintiffs sought a reformation of the description in the policies, contending that each policy was intended to cover the entire structure. The Court entered a judgment reforming the policies to include the entire building. The issues as to the value of the building and the damage sustained were submitted to a jury. Judgment was entered against each defendant for its proportionate share of the verdict. The insurance companies contend that reformation was not justified by the law and evidence and that the judgments are excessive. A determination of these issues requires a summary of the evidence.
 
 
 2
 The insured building was used as an automobile sales and service agency and was located on all of the above described lots. Each of the policies except one described the insured property as being located on Lots 5, 6, 7, and the North 10 feet of Lot 8, naming the insured as H. Mead Norton and Sam Norton, Jr. One policy described the insured building as being located on the South 15 feet of Lot 8 and all of Lot 9, with Ella Norton named as insured. The history of the building explains, to some extent, the discrepancy in these legal descriptions. The original construction on the property was on the South 15 feet of Lot 8 and all of Lot 9. It was a two story brick building originally used by Sam Norton, Sr., as a livery stable. With the advent of the automobile it was used as a garage and automobile sales agency. In 1926, Sam Norton, Sr. retired from the business, which was taken over by his sons, Mead and Sam, Jr.[1] They acquired the adjoining Lots 5, 6, 7 and the North 10 feet of Lot 8. A building program was inaugurated which included a complete remodeling of the old building and the construction of a three story structure on the adjoining lots.
 
 
 3
 The result of the remodeling and the new construction was one building, which was used in its entirety for the purposes of the business. It was operated as one building and was so constructed that separate use of the old and new portions could not be had without again remodeling the structure. The repair and service portion of the business, including the paint shop, was in the old building. Entrance to the second story of the old building could be had only over a ramp from the new part. There was a common front for the entire building. All of the utilities were supplied as though it were a single building. There was one address for the business. The policy writing agents were advised that the policies were to cover "the garage building". The new portion was fireproof, whereas the remodeled older part was only semifireproof. The Oklahoma Inspection Bureau inspected the building and defined it as a unit, with one rate for insurance.[2] The different agents used this rate in fixing the policy premiums.
 
 
 4
 Each of the agents, when the policies were written, knew these facts and were familiar with the method of the operation of the business. They knew that the repair and service part of the business, where the fire occurred, was done in the old part of the building; they knew that there was but one address for the building. In preparing the policies and giving the height and address of the insured premises there was some variance. Five of the policies gave the address as 116-124 North Union, two as 116-120 North Union, one as 116 North Union, and one as 118-120 North Union. One policy described the building as one and two story, three as two and three story, and five as a three story building. The policies referred to the insured property as being occupied as "garage and repair shop" or "garage and automobile sales agency". Each of the agents knew that the entire building was utilized for these purposes. There was evidence by the plaintiff that the policies were intended to cover the entire building. There was no evidence that the coverage of any policy was limited to only a portion of the building. The import of the testimony of the agents who testified was to the effect that the policies covered the entire structure.
 
 
 5
 The trial court found that "the insureds and several policy writing agents, and each of them, intended and understood that each of said policies covered the aforesaid entire building housing Norton Chevrolet Agency and Garage, and the defendants each charged the same rate of premium on the policy". The Court concluded that the policy should be reformed to carry out the intention of the parties. It is well settled in Oklahoma that an insurance policy may be reformed, after loss, to carry out the intention of the parties, where the evidence of a mutual mistake is clear and convincing. Davis v. Universal Insurance Co., 169 Okl. 593, 38 P.2d 932. See also Garrett v. Pollock, Okl., 299 P. 2d 516; Fabbro v. Reese, 206 Okl. 655, 246 P.2d 324. This does not mean that the evidence must be uncontradicted. Prudential Fire Insurance Co. v. Stanley, 191 Okl. 506, 131 P.2d 88. The purpose of the rule is to prevent reformation of instruments on loose, contradictory and unsatisfactory evidence. We think the evidence meets the test of the Oklahoma cases and the judgment reforming the policies was not erroneous.
 
 
 6
 Furthermore, we think there was an ambiguity in the policy descriptions which would warrant the taking of evidence to determine the intention of the parties as to the coverage. In determining the liability under an insurance policy, effect will be given to all its provisions, if possible, and when the language is ambiguous or susceptible of different constructions, it will be strictly construed against the insurance company and the construction most favorable to the insured will be adopted. Great American Ins. Co. of New York v. O. K. Packing Co., 202 Okl. 231, 211 P.2d 1014; Lincoln Health & Accident Ins. Co. v. Johnigan, 114 Okl. 223, 245 P. 837. The Court found that it was the intention of the parties that the policies should cover the entire building. This finding is supported by the evidence and would sustain the judgment without reformation.
 
 
 7
 The jury found that the actual cash value of the building prior to the fire was $75,000, and that the fire damage amounted to $21,000. The value of the building becomes important because of the co-insurance provisions of the policies. Under these provisions, if the building were not insured for eighty percent of its value, the insureds were to be considered co-insurers and as such would share the proportionate part of the loss. The co-insurance provisions are not effective if the jury's verdict is allowed to stand. We find no merit in the contention that the verdict is not sustained by the evidence and is excessive. In Oklahoma, actual cash value has been held to be synonymous with sound value, salable value, or actual money value. Liverpool & London & Globe Ins. Co. v. McLaughlin, 70 Okl. 237, 174 P. 248; Palatine Insurance Co. of London, England v. Commerce Trust Co., 73 Okl. 236, 175 P. 930. In Connecticut Fire Insurance Co. of Hartford, Conn. v. Youngblood, 199 Okl. 227, 184 P.2d 792, the Court said that the actual cash value of property was the fair and reasonable price for which it could be sold on the market in the ordinary course of business. The most recent expression of the Oklahoma Supreme Court is in Rochester American Ins. Co. v. Short, Okl., 252 P.2d 490, 491, where it is said: "As a general rule, the actual cash value of a building at the time of destruction by fire is determined by many factors in order to effectuate complete and proper indemnity. The cost of reproduction, the age of the building, the condition in which it has been maintained, all facts and circumstances which would logically enable the trier of such facts to determine a correct estimate of the loss are proper yardsticks to be used in order to arrive at the value of the insured property as it stood on the day of the fire." An outstanding real estate appraiser was of the opinion that the value of the building was $75,000. The principal criticism of his method of determining the value was that he took into consideration what he termed "functional obsolescence". He was of the opinion that it was an element to be considered in arriving at the value of a building. We see no reason why it should not be so considered in proper cases where the evidence warrants and it is one of the "proper yard-sticks" for determining such value. McAnarney v. Newark Fire Insurance Co., 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149; Gervant v. New England Fire Insurance Co., 306 N.Y. 393, 118 N.E.2d 574. There was also ample evidence to sustain the jury's verdict of $21,000 for the fire damage. The contractor who repaired some of the damaged parts of the building testified that the damage was more than $21,000.
 
 
 8
 Objection is made to the allowance of interest on the amount of recovery from sixty days after the filing of the proof of loss. Under the Oklahoma statutes and decisions there was no error in the allowance of interest. 23 Okl.Stat.Ann. 22; Fidelity-Phenix Fire Insurance Co. of New York v. Board of Education, 201 Okl. 250, 204 P.2d 982.
 
 
 9
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 When Sam Mead, Sr. died, his widow, Ella Norton became the owner of a life estate, with the right of sale, in Lot 9 and the South 15 feet of Lot 8, Block 26. Upon the death of Ella, his children, including the plaintiffs Sam, Jr., and Mead, will own the property
 
 
 [2]
 The Oklahoma Inspection Bureau is a licensed insurance rating organization, maintained by member and subscribing companies writing fire insurance in Oklahoma